FRANK SALOMONE, as Administrator of the Estate of FRANK SALOMONE, Deceased, Respondent, *v.* YELLOW TAXI CORPORATION, Appellant.

Negligence — trial — charge — taxicab found in river — action to recover for death of one last seen alive riding therein — inference that intestate was a passenger question for jury — credibility of witnesses for jury — erroneous charge — doctrine of res ipsa loquitur not applicable — inference of negligence cannot be inferred from failure of defendant to explain accident.

1. Where, in an action to recover for the death of plaintiff's intestate, who was last seen alive in one of defendant's taxicabs, which three months thereafter was fished out of the East river where intestate, the driver and another who was in the taxicab were found drowned, it appears that intestate who had met with a party of friends at a store in the borough of Manhattan, of which the driver of the taxicab was one, he not being called there in the line of his work but stopping there to meet with his friends, left with two others and the driver shortly before eleven o'clock at night in the taxicab, intestate directing the driver to take him to his home in Long Island City and

inviting the others to go with him, but that one of the party refused to go and got out at his home, without paying any fare, it is just as reasonable to infer that the driver was taking his friends home as an accommodation as it is to infer that he was hired merely as a chauffeur and was to be paid accordingly. The fact that some of the witnesses said that the chauffeur turned the flag down, indicating that fare was to be collected, is not conclusive. Their credibility was for the jury.

2. It was, therefore, error for the trial justice to instruct the jury that as matter of law intestate was a passenger in defendant's taxicab. It was not a question of law for the court but should have been left for the jury to determine.

3. It was also error for the trial justice to charge the doctrine of *res ipsa loquitur* as applicable, assuming as a fact that intestate was a passenger in the taxicab and instructing the jury that if the chauffeur drove the car off the dock and defendant could not explain it, plaintiff was entitled to recover. In cases of this kind dealing with inferences and presumptions, it is the jury and not the judge which is to draw the inference and determine the effect of presumptions. It is not the accident which alone and of itself may raise the presumption of negligence. It is the accident accompanied by all the surrounding circumstances.

4. In any event the facts and circumstances in this case are not such that the rule of *res ipsa loquitur* applies, nor can any inference of negligence be inferred or presumed from the failure of the defendant to explain the accident.

*Salomone* v. *Yellow Taxi Corporation*, 215 App. Div. 790, reversed.

(Argued March 2, 1926; decided March 30, 1926.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered December 31, 1925, affirming a judgment in favor of plaintiff entered upon a verdict.

*Abel E. Blackmar* for appellant. The court erred in his charge to the jury. The presumption of negligence does not arise from the mere fact of injury. (*Holbrook* v. *Utica & Schenectady R. R. Co.*, 12 N. Y. 236; *Curtis* v. *Rochester & Syracuse R. R. Co.*, 18 N. Y. 534; *Hoffman* v. *Third Avenue R. R. Co.*, 45 App. Div. 586; *Plumb* v. *Richmond L. & R. R. Co.*, 233 N. Y. 285; *Seybolt* v. *N. Y., Lake Erie & W. R. R. Co.*, 95 N. Y. 563; *Loudoun*

v. *Eighth Ave. R. R. Co.*, 162 N. Y. 380; *Breen* v. *N. Y. Cent. & H. R. R. R. Co.*, 109 N. Y. 297; *Stierle* v. *Union R. R. Co.*, 156 N. Y. 70; *Griffen* v. *Manice*, 166 N. Y. 188; *Scott* v. *London Dock Co.*, 3 H. & C. 596.) The court erred in declining to dismiss the complaint upon the whole evidence on the ground that there was no evidence from which negligence of the defendant or its employees could be inferred. (*Moscato* v. *Line*, 164 App. Div. 412; *Fearick* v. *Lehigh Val. R. R. Co.*, 210 App. Div. 742; *Wicks* v. *Cowperthwait Co.*, 203 App. Div. 705; *Searles* v. *Manhattan R. R. Co.*, 101 N. Y. 661; *Ruppert* v. *Bklyn. Hgts. R. R. Co.*, 154 N. Y. 90; *Ruback* v. *McCleary*, 220 N. Y. 188; *Francey* v. *Rutland Railroad Co.*, 222 N. Y. 482.)

*Avel B. Silverman, Charles Goldenberg* and *Benedict A. Leerburger* for respondent. In view of the undisputed facts, the charge of the court was without error. (*Seybolt* v. *N. Y., L. E. & W. R. R. Co.*, 95 N. Y. 563; *Breen* v. *N. Y. C. & H. R. R. R. Co.*, 109 N. Y. 297; *Markwold* v. *Oceanic Steamship Navigating Co.*, 11 Hun, 462; *Edgerton* v. *N. Y. & H. R. R. Co.*, 39 N. Y. 227; *Maslenka* v. *Brady*, 188 App. Div. 661; *People* v. *Martin*, 235 N. Y. 550.) The evidence was sufficient to justify a verdict for the plaintiff. (*Brown* v. *Nassau Electric Railroad Co.*, 209 N. Y. Supp. 205.)

CRANE, J. On or about the 30th day of April, 1923, the body of Frank Salomone was found drowned in the East river off the foot of Broadway, Astoria. The last time he had been seen alive was on the night of February 7, 1923, in the borough of Manhattan.

The Yellow Taxi Corporation has been held liable for his death on the finding that its chauffeur ran one of its taxicabs with Frank Salomone inside, off the dock at the foot of Webster avenue, in Long Island City.

As no one saw the accident, and as the whereabouts of the taxicab and Frank Salomone was not discovered for

a period of three months, the recovery has been obtained below upon inferences and presumptions arising from the known facts. The question here presented on appeal is whether those inferences and presumptions are reasonable under the charge as delivered by the trial justice.

Frank Salomone lived with his sister at 768 Vernon avenue, Long Island City.' This was between the cross streets, Washington and Webster avenues. Webster avenue crossed Vernon avenue and ran to the river. Blackwells Island is just opposite this point. The East river is distant about 723 feet from Vernon and Webster avenues. The plaintiff's intestate, therefore, lived on Vernon avenue, which ran parallel with the East river and about three blocks therefrom. The deceased had lived in Long Island City between two and three weeks, having resided before that at 314 East Sixty-second street, Manhattan. At the time of the alleged accident, Frank Salomone was twenty-three years of age, and an automobile mechanic by occupation. He was also, according to his sister's testimony, a " taxi chauffeur." The deceased had friends in Manhattan, and on the night of February 7, 1923, they met in the candy store of Benjamin Ross, 304 East Sixty-second street. In the store at the time were Dominick J. Annette, a chauffeur named Caniano, Nick Tagliamonti, Frank Candella, Frank Salomone, the deceased, and " a few more of the boys." Caniano was a driver for the defendant. He drove a yellow taxicab, and on the night in question it was outside near the candy store, while he, Caniano, was in with " the boys." Caniano was no stranger to them. The plaintiff's principal witness, Annette, testifies:

" Q. How long had you known Caniano? A. I knew Caniano, well, pretty near all his lifetime. We were brought up together.

" Q. How long had you known Mossioli? A. Mossioli, I knew him about fourteen years.

" Q. And Mr. Salomone? About thirteen."

Mossioli was of the party, the witness Annette meeting him in front of the store. This meeting of these friends occurred about ten-thirty in the evening. Frank Salomone, Annette and Billy Mossioli got in Caniano's taxicab, which as I have said, was in front of the candy store. Caniano drove his friend Annette home to Fifty-eighth street. Annette there left the taxicab, and this is the last anybody knows about it until it was fished up three months afterwards from the East river at the foot of Webster avenue.

Annette testified that Frank Salomone said to Nick Caniano, the chauffeur:

" Drive me over to Webster and Vernon Avenue, and drive up one block and stop at the big white stone house at Vernon Avenue.

· " Q. Tell me, when the three of you men got into the cab what, if anything, did the chauffeur do with respect to the flag? Do you know what I mean by that? A. He threw the flag down; Nick Caniano threw the flag down. * * * Well, throwing a flag down is when somebody steps into the cab and you want the amount to register on the meter and you throw the flag down."

When the witness got out at his home in Fifty-eighth street, he did not pay any fare to Caniano.

It does not appear where Mossioli lived. He too went to Long Island City with Frank Salomone, for he was also drowned and his body found later in the East river. Was he going to his home, or was he going home with Frank Salomone; and was the chauffeur Caniano one of the party? This must be left to inference. Annette was asked this question:

" Did you tell anybody, in words or substance, that you then started to take Salomone home as Salomone had been out all night before? A. I don't remember."

Tagliamonti was of the party in Ross' candy store, and he testified for the plaintiff. He had known Frank Salomone for about thirteen years. That night Salomone

came for him at his home, 314 East Sixty-second street, and they went down to the candy store about quarter of ten. The taxicab was there outside the store, and Nick Caniano, the taxi driver, was inside the store. It is apparent, therefore, that Frank Salomone did not summon the taxicab, and that Caniano, the chauffeur, had not come to the candy store for Salomone or at his call. These young men left the candy store about quarter of eleven, Salomone, Mossioli and Annette getting in the taxicab. The witness heard Salomone tell Caniano to take him home to Vernon avenue, and saw the chauffeur put his hand on the clock.

Another witness, Frank Candella, was also in this candy store, 304 East Sixty-second street, on the evening of February 7, 1923, and testified as follows:

" Q. Who else was in that store besides you and Salomone? A. Billy Mossioli, Dominick Annette, Nicholas Tagliamonti, *Nick Caniano, and quite a few of the other boys.*"

Caniano was, therefore, one of the boys. These people were his friends, and he was of this party with Frank Salomone, according to this witness.

Where were these friends going? They left the candy store, according to this witness, at five minutes to eleven. He testifies: " I went outside with them, and Frank Salomone asked me to go with them, so I said ' No; it's too late.' "

To whom did Frank Salomone refer by the word " them? " The witness tells us; Nicholas Caniano, Frank Salomone, and Billy Mossioli. Where were the three going that caused this witness to think it was too late to go with them? He says, referring to Salomone, " He still insisted on me going with him.

" Q. What did he do to the chauffeur? A. He said, ' Take me to Long Island City, where I live.' * * * ' Take me to Vernon Avenue '— and I don't remember the other street. Vernon and Webster, that's it. * * *

When I seen him enter the cab Frank insisted upon me going with him, and I says, ' No.' Then I closed the door, and the chauffeur then pulled down his flag, and started towards Second avenue."

This witness, Candella, lived in First avenue, Manhattan. Where did Frank Salomone want to take him?

In the clothing of Frank Salomone, when he was taken out of the East river, were found his chauffeur's license and his chauffeur's badge.

The very first question that arises in this case is whether or not Frank Salomone was a passenger for hire in the defendant's taxicab on this night in question. Had he hired the cab; had he employed Caniano to drive him home; was he a paid passenger, or was it a joy ride? If the latter, the defendant is not liable. The Yellow Taxi Corporation is answerable for the acts of Caniano when acting as its servant in the course of his employment. It is not liable if he were accommodating his friends.

Here was a party of friends meeting at a candy store from ten till eleven o'clock in the evening. The witnesses refer to them as " the boys." Caniano was one of the boys. So far as the evidence shows, he was not called to the candy store in the line of his work. He stopped in there to meet with his friends. He had no call to come there. Frank Salomone did not summon him. He, with Salomone and two others, left the candy store to go to Salomone's home; Salomone asked another friend to join them. One of the party was taken to his home in Fifty-eighth street and got out without paying any fare.

What are the reasonable inferences to be drawn from these facts? I think it is just as reasonable to infer that Caniano was taking his friends home as an accommodation, as it is to infer that he was hired merely as a chauffeur and was to be paid accordingly. The fact that some of these witnesses said that the chauffeur turned the flag down, indicating that fare was to be collected, is not conclusive. The testimony of these witnesses, in

**17**

view of their connection with the case and with the parties, and of the improbabilities of some parts of their story was to be submitted to the jury for its scrutiny, examination, and acceptance or rejection, in whole or in part. The credibility of the witnesses who were of that party on that night was for the jury.

If this be correct, then the trial justice was in error in his charge to the jury. He told them that as matter of law Frank Salomone was a passenger in defendant's taxicab. His words are:

" The proof in this case is that this man was a passenger in the defendant's cab, being operated by the defendant's chauffeur.

" The fact that the deceased knew the defendant's chauffeur doesn't make any difference at all in the legal question. It is just the same as if he was a total 'stranger. He was a passenger in the defendant's cab, and if he lost his life through the carelessness of the chauffeur, then this defendant must pay whatever damage you think is proper."

To this charge an exception was taken. The jury should have determined whether Salomone was a passenger. It was not a question of law for the court. The jury might have drawn the inference that Caniano was of the party, using the taxi to drive his friends about. The exception presents reversible error.

The justice charged the doctrine of *res ipsa loquitur* as applicable to this case. He assumed as a fact, as I have already stated, that the deceased was a passenger in the taxicab. He in substance told the jury that if the chauffeur drove the car off the dock and the defendant could not explain it, the plaintiff was entitled to recover. The charge reads as follows:

" The law says that when any person or corporation, taxicab or railroad or bus or whatever it may be, carries people for hire, becomes a public carrier, a common carrier, as we call them — carries people for hire — and

an accident happens while you are in the public con-
veyance, that the person who is injured or the family
of the person who is killed doesn't have to prove what
it is that caused the accident or death, but that if an
accident happens and an injury is received or death
results while a person is a passenger in a public con-
veyance, that then it is the duty of the people who
maintain the public conveyance to show that the accident
happened without fault on their part; and if they can't
do that they must pay the bill, whatever the fair
damage is."

To this charge an exception was taken. Here also we
think the judge trespassed upon the province of the
jury, and decided matters which the law must leave to
them. In cases of this kind dealing with inferences and
presumptions, it is the jury and not the judge which
is to draw the inference and determine the effect of
presumptions. It is not the accident which alone and
of itself may raise the presumption of negligence. It is
the accident accompanied by all the surrounding circum-
stances. The circumstances and the events leading up
to the accident may overcome any presumption of negli-
gence which might otherwise arise. Even when there
be a presumption of negligence arising from a failure
upon the part of a common carrier to explain how an
accident happened, it is for the jury to say whether the
presumption, which is only *prima facie* evidence of
negligence, entitles the plaintiff to a verdict. Upon a
*prima facie* case, the jury may find for the plaintiff; they
are justified at law in so finding, but they are not com-
pelled to award damages. The remoteness of the accident
from the conclusion which a reasoning mind would draw
from the defendant's failure to explain, may always be
taken into consideration. That is, a failure to explain
does not necessarily indicate negligence. For instance,
the defendant comes into court in this case, and is
apparently ignorant of how this accident happened; it

has not and cannot offer any explanation. Yet the fact is that its yellow taxicab, of which Caniano was chauffeur, at some time and under some circumstances went into the East river, and Caniano and the two men with him were drowned. Does this in and of itself raise the presumption of negligence, compelling the defendant to pay damage because the defendant cannot give an explanation of the accident, or show that Caniano was not negligent?

This all depends upon the circumstances, not entirely upon the accident, or the drowning. The jury are not bound to presume negligence from the absence of an explanation, but given all the surrounding circumstances, they may or may not infer it, according to the force and weight of those circumstances. What are the circumstances in this case? I have stated some; let me state others.

No one knows what happened. The car and these men were last seen at eleven o'clock on the night of February 7, 1923, at Fifty-eighth street, Manhattan. The driver was told to go to Vernon avenue, Long Island City, where Salomone lived. Three months afterwards the car and the men were found in the East river. Salomone was a chauffeur; Caniano was a chauffeur; they were friends. That evening they had been together in Ross' candy store in Sixty-second street, Manhattan. They were some of "the boys" who met at this place. It is reasonable to infer that Salomone was taking his friends somewhere, for Mossioli went along with him, and he invited Candella, who refused to go. The testimony is that Salomone lived in Vernon avenue, about three blocks, or to be exact, 723 feet from the river. The taxicab did not go to his house, but turned. Webster avenue runs at right angles to Vernon avenue, and if the car turned from Vernon avenue into Webster avenue, what was Salomone doing all the time it was traveling three blocks into the river? He must have known where he lived and the direction to get there. The fact is,

no one knows where these three men went after they left Fifty-eighth street, New York city, or which way they drove to reach the dock, or at what time of day or night they went off the dock. No one knows whether or not they stopped anywhere else on the way to Long Island City or in Long Island City. Even the testimony of the witnesses, the friends of Salomone, to the effect that Salomone told Caniano to drive to his home, was a story which the jury were not obliged to believe.

Under all these circumstances, the jury was called upon to infer that Caniano drove Salomone as a passenger directly from Fifty-eighth street to Long Island City; that he turned into Webster avenue by mistake instead of continuing up Vernon avenue; that he drove three blocks, or 723 feet into the East river over a stringpiece twenty inches high. The river, as the testimony shows, could have been clearly seen and distinguished that night all the way from Vernon avenue. Not only must the jury infer all these facts from the mere statement that Salomone told the chauffeur to drive him home, and from the fact that the men were found drowned three months afterwards, but the judge has also told them that because of the drowning in the taxicab, and the failure of the defendant to explain the accident, the taxicab company must pay damage. He said: " If death results while a person is a passenger in a public conveyance, * * * it is the duty of the people who maintain the public conveyance to show that the accident happened without fault on their part; and if they can't do that they must pay the bill."

This is not the law. (*Griffen* v. *Manice,* 166 N. Y. 188.)

If this be a case in which inferences of negligence may be drawn upon the strength of inferences as to how the accident happened, the jury should at least have been told that they were the ones to draw the inference, and that the law did not compel them to determine that there was neglience. They should have been told that

from all the circumstances, if they believed the witnesses, they would be justified in presuming neglience on the part of Caniano. Whether or not they should draw such an inference was a matter for their determination. On the other hand, is it not reasonable to presume or to infer that these three friends starting out from New York were acting in concert; that they were going somewhere with Salomone, for a joy ride or on a pleasure party, or to his home; and that when they came to Webster avenue, they were doing something which made them all oblivious to their whereabouts, or else they were all in a condition that they did not know where they were going? I think that this is as fair and as reasonable an inference to be drawn from the evidence as to infer that Caniano was a negligent chauffeur who drowned his passengers.

However, I for one do not think the facts and circumstances in this case are such that the rule of *res ipsa loquitur* applies, or that any inference of negligence can be inferred or presumed by the failure of the defendant to explain this strange accident. My conclusion, therefore, is that the judgments below should be reversed, and the complaint dismissed, with costs in all courts.

Hiscock, Ch. J., Pound, McLaughlin, Andrews and Lehman, JJ., concur; Cardozo, J., absent.

Judgments reversed, etc.