Chief Judge Cooke
(dissenting). The majority today engages in an unfortunate exercise in judicial rule making in an area that should be left to the jury. This attempt to precisely prescribe what steps the proprietor of a baseball field must take to fulfill its duty of reasonable care is unwarranted and unwise. Furthermore, the provision of CPLR 1411, providing that contributory negligence or assumption of the risk “shall not bar recovery”, should not be disregarded. I therefore dissent and vote to affirm.
As the majority recognizes, the proprietor of a baseball field owes the same duty to spectators that any landowner owes to a person who comes onto the owner’s property— “reasonable care under the circumstances” (Basso v Miller, 40 NY2d 233, 241; see, also, Scurti v City of New York, *334 40 NY2d 433). This duty requires that the landowner “must act as a reasonable man in maintaining his property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk” (Basso v Miller, 40 NY2d 233, 241, supra, quoting Smith v Arbaugh’s Rest, 469 F2d 97, 100).
The majority errs, however, in deciding as a matter of law exactly what steps by a baseball field proprietor will constitute reasonable care under the circumstances. Such a determination, by its very dependence upon the “circumstances”, hinges upon the facts of the individual situation and should be left for the jury. Indeed, those exceptions to this rule that have been made by courts occur only in those narrow classes of cases where an identical set of facts is likely to recur with regularity, and “[s]uch holdings today are rare” (2 Harper and James, Torts, p 977).
This court has made clear that “[w]hat safety precautions may reasonably be required of a landowner is almost always a question of fact for the jury” (Nallan v Helmsley Spear, Inc., 50 NY2d 507, 520, n 8; see, also, Scurti v City of New York, 40 NY2d 433, 445, supra). Indeed, well before Basso extended the landowner’s duty of reasonable care to all categories of persons who come onto the property, it was well established that “the municipality which extends to its citizens an invitation to enter and use recreational areas owes to those accepting that invitation a duty of reasonable and ordinary care against foreseeable dangers. What degree of care is reasonable necessarily depends upon the attendant circumstances and is a jury question” (Caldwell v Village of Is. Park, 304 NY 268, 274; see, also, Sadowski v Long Is. R. R. Co., 292 NY 448, 455-456). This is not to say that every case of alleged negligence by the proprietor of a baseball field must go to the jury. But it is just as unreasonable to declare with such absolutism that, outside narrow and artificial limits, no such case can go to the jury.
The majority has in effect undertaken the task of prescribing the size, shape and location of backstops and other protective devices that will satisfy a baseball field owner’s duty of reasonable care under-the circumstances. This at *335 tempt to impose a straight jacket upon the relationship between a baseball field proprietor and spectators, regardless of the particular circumstances, is arbitrary and unrealistic. It is reminiscent of the Supreme Court’s attempt^ in the early years of the automobile, to impose upon the operator the duty of leaving the vehicle and examining each railroad grade crossing on foot, if necessary for a better view of the tracks (Baltimore & Ohio R. R. v Goodman, 275 US 86 [per Holmes, J.]). This standard enjoyed little favor among State courts, engendered confusion among lower Federal courts attempting to apply it and was quickly repudiated by the Supreme Court (Pokora v Wabash Ry. Co., 292 US 98).
In Pokora, Justice Cardozo noted that the problems springing from the grade-crossing rule emphasized “the need for caution in framing standards of behavior that amount to rules of law” (id., at p 105). Indeed, railroad crossing cases provide a good example of this court’s reluctance to impose blanket rules of conduct divorced from actual events. More than a century ago, this court stated that “[i]t is a general rule that care commensurate with the danger must be exercised, and it is also a general rule that it is the province of the jury, and not of the court, to determine whether such care has been exercised” (Dolan v Delaware & Hudson Canal Co., 71 NY 285, 288; see, also, Beisiegel v New York Cent. R. R. Co., 34 NY 622, 625-626). The court has expressed this reluctance to take negligence questions from the jury in a variety of other contexts, as well (see, e.g., Derdiarian v Felix Contr. Corp., 51 NY2d 308, 315; Loughran v City of New York, 298 NY 320, 322; Foltis, Inc. v City of New York, 287 NY 108,122; Salomone v Yellow Taxi Cab Corp., 242 NY 251, 259; Sheridan v Brooklyn & Newtown R. R. Co., 36 NY 39, 43).
The wisdom of eschewing such blanket rules where negligence is concerned is obvious. In the present context, the majority has held as a matter of law that the proprietor of the baseball field fulfilled his duty of reasonable care by erecting a backstop that was 24 feet high and 50 feet wide. The court issues this rule with no more expertise available to it than Justice Holmes had in 1927 when he *336 recommended that motorists venture on foot onto railroad grade crossings for a better view. It has selected one of a variety of forms of protection currently in use at professional ballparks and school playgrounds — what in reality is nothing more than a straight, high fence behind home plate — and has designated it as sufficient protection as a matter of law.
Such a ruling robs the jury of its ability to pass on whether the circumstances here might have made this type of backstop inadequate. In the present case, the majority has taken from the jury its ability to consider the following evidence: that the cost of placing “wings” on the backstop extending to first and third base would have been only $209 when the backstop was built; that other baseball diamonds do have such wings; that the type of game being played at the field was not a softball game between young tykes but rather a varsity high school hardball game involving players such as the batter in this incident, who was six-foot two-inches tall, weighed 190 pounds and was advanced enough in ability to later play professional ball; that school authorities were aware that line drives “frequently” went over the low fence that ran along the base lines, and that there were no signs or other warnings of the dangers of standing behind this fence. Because of public familiarity with the “national pastime”, no expert testimony would generally be required to make out a showing of failure to exercise due care in such a case (see Meiselman v Crown Hgts. Hosp., 285 NY 389, 396). In this case, however, the jury even had before it the testimony of a civil engineer as to the feasibility and minimal cost of ensuring greater safety for spectators. This makes an even stronger argument for sending this case to the jury.
The court’s ruling will also foreclose juries in the future from considering the wide range of circumstances of individual cases, as well as new developments in safety devices or procedures. Unless the court plans to periodically take up such cases in the future to adjust its rule, it has frozen a position that is certain to become outdated, if it is not already. It would make as much sense for the court to decree, as a matter of law, what sort of batting helmet or *337 catcher’s mask a school district should supply to its baseball team. Baseball may be a sport steeped in tradition, but it is hardly immune from technological change and shifts in public perception of what constitute reasonable safety measures. It has traditionally been the jury that reflects these shifts and changes.
Finally, a few words concerning the doctrines of assumption of the risk and contributory negligence are in order. As the majority notes, in the past these doctrines generally provided the basis for denying recovery when a spectator who willingly stood or sat in an unprotected area was injured by a baseball. When the Legislature enacted comparative negligence (L 1975, ch 69), it abolished those doctrines as total bars to a plaintiff’s recovery. Now (and at the time of this incident), assumption of the risk and contributory negligence are denominated “culpable conduct” and serve only to proportionately diminish a plaintiff’s recovery (CPLR 1411; see Memoranda of Judicial Conference, NY Legis Ann, 1975, pp 23, 24). Yet the majority, although it speaks in terms of the defendant’s duty of reasonable care, has effectively resurrected those doctrines as total bars to recovery. By holding as a matter of law that the defendant’s duty of reasonable care extends only to the construction of a backstop of specific proportions, the majority forecloses a jury from considering any other factors that might be present in an individual case. This rule of law denies recovery to injured spectators as effectively as the old doctrines of assumption of the risk and contributory negligence ever did, and uses a fundamentally similar rationale to do so.
Accordingly, the order of the Appellate Division should be affirmed.
Judges Gabrielli, Jones and Wachtler concur with Judge Jasen ; Chief Judge Cooke dissents and votes to affirm in a separate opinion in which Judges Fuchsberg and Meyer concur.
Order reversed, etc.