Wachtler, J.
Today the court has held that the liability of a landowner to one injured upon his property should be governed, not by the ancient and antiquated distinctions between trespassers, licensees, and invitees decisive under common law, but rather by the standard applicable to negligence cases generally, i.e., the "standard of reasonable care under the circumstances whereby foreseeability shall be a measure of liability” (Basso v Miller, 40 NY2d 233, 241). This case involves the further application of that standard and consideration of those factors, conclusive under prior law, which may continue to have some relevance in determining a landowner’s liability for injury to one who concededly entered his property without permission.
On June 26, 1968 John Scurti, a 14-year-old high school student accompanied by another boy, entered a railroad yard through a hole in the fence at the rear of a playground located in Glen Ridge Park in Queens County. He then climbed on the top of a freight car on mainline track No. 5 and was electrocuted when he came in contact with a high-voltage catenary wire used to supply power to the locomotives.
This suit, commenced by Scurti’s father as administrator of his son’s estate and in his individual capacity, seeks damages for wrongful death, pain and suffering and loss of services. At *438 the trial there was proof that the defendant New York Connecting Railroad Co. owns the yard and the tracks; that the defendants Penn Central Co., New York, New Haven and Hartford Railroad Co. and its trustees own the train and operate mainline track No. 5 and two others pursuant to a trackage agreement with Connecting; and that the defendant Metropolitan Transit Authority (MTA) and its subsidiary Long Island Railroad Co. (LIRR) operate diesel engines in the area, which are controlled from a tower located several hundred yards from the scene of the accident.
There was also proof that the fence through which the boys entered the railroad yard is part of Glen Ridge Park which is owned and maintained by the City of New York as a recreational area and playground; that there are several holes in the fence and that on both sides there are well-worn paths leading to these openings which were made and utilized by children in the area. Furthermore it was stipulated that in this particular yard four teenagers were electrocuted or seriously injured by overhead high-tension wires on four separate occasions—August, 1964, July, 1965, April, 1968 and May, 1968—prior to Scurti’s death in June of 1968. It is conceded that Scurti did not have permission to enter the yard or to climb upon the train.
At the end of the plaintiffs case the court dismissed the complaint on the ground that Scurti was a trespasser on the railroad’s property at the time of his death. On this appeal the defendants claim that this determination, affirmed by a divided court at the Appellate Division, was correct. In addition the MTA and the LIRR urge that there was no basis under any standard for holding them liable for the injury. The City of New York, it should be noted, argues that the railroads breached no duty owed to the trespasser, apparently on the theory that the city cannot be held liable for contributing to the injury if the other defendants are immune.
The order of the Appellate Division should be modified. With the elimination of the special immunities conferred on landowners, their liability to persons injured on their property depends on the reasonableness of their conduct under all the facts and circumstances. However even under that standard there is no basis for holding the MTA or the LIRR liable in this case. They did not own or control the yard, the tracks, the train or the high-tension wires in the area. They were simply bystanders who ran diesel—not electric powered—trains in *439 the yard, and their activities had nothing to do with Scurti’s death. The order of the Appellate Division should be affirmed insofar as it dismissed the complaint against the LIRE and the MTA.
As to the other defendants however, there should be a new trial. They owned or operated the instrumentalities which caused or contributed to the boy’s death and the jury could find that under the circumstances, they failed to use reasonable care to avoid a foreseeable injury. And since there must be a new trial it is appropriate to indicate at least in general terms, how this trial should differ from a trial held under prior law, and what factors conclusive under prior law, may continue to have some relevance in determining the liability of a landowner for injury to one who concededly entered the property without permission.
The starting point at common law was the fact that the injury, no matter how foreseeable, had occurred on the defendant’s property. At a time when landowners were a dominant class and ownership of land was considered akin to a sacred right, the fact that the plaintiff was a trespasser was of the utmost importance. This attitude was reflected in the law which, in its practical application, valued the rights and privileges of ownership "over the lives and limbs of trespassers” (2 Harper and James, Torts, p 1438; Hughes, Duties to Trespassers, 68 Yale LJ 633, 656, 657; 18 Harv L Rev 150; cf. Prosser, Torts [2d ed], p 434). Thus the landowner was held to owe no duty to a trespasser other than the obligation to refrain from willfully or wantonly injuring him (Hughes, op. cit., p 635; Johnson v New York Cent. & Hudson Riv. R. R. Co., 173 NY 79, 82). This simply proscribed certain criminal or quasi-criminal acts such as shooting (Magar v Hammond, 183 NY 387) or setting traps (Bird v Holbrook, 4 Bing 628; Walsh v Fitchburg R. R. Co., 145 NY 301; Hughes, op. cit, p 649), and did little more than serve as a reminder that it was not open season on trespassers.
Later, as the general theory of tort liability developed in response to a heightened awareness of the value of human life, new reasons were found to justify the landowner’s immunity. It was said, for instance, that there was little likelihood that one would enter another’s property without permission and thus the trespasser was not foreseeable (2 Harper and James, op. cit., p 1436; Prosser, op. cit., p 433). It was also argued that a landowner should be entitled to develop his *440 property in the most profitable way, and any requirement that he alter the condition of his property or curtail his activities in order to protect intruders would create unreasonable burdens inhibiting enjoyment or profitable use of the land (2 Harper and James, op. cit., p 1437; Smith, Liability of Landowners to Children Entering Without Permission, 11 Harv L Rev 349, 362; Prosser, op. cit., p 434; Walsh v Fitchburg R. R. Co., 145 NY 301, supra; Mendelowitz v Neisner, 258 NY 181). And finally it was urged that one who enters without permission knowing that the property was not prepared for him assumes the risk or is guilty of contributory negligence as a matter of law (2 Harper and James, op. cit., pp 1438-1439; Prosser, op. cit., p 434; Hughes, op. cit., p 687).
All of these hypotheses obviously have some probative value. But the facts in a particular case might show that trespassers were foreseeable or even foreseen; that the injury could have been prevented by a minimal effort on the part of the landowner; and that there was no basis for finding that the trespasser proceeded in the face of a known danger or was guilty of contributory negligence. To say that the hypothetical factors are always present and thus entitled to conclusive effect in all cases is the purest legal fiction, particularly unrealistic in the case of the infant trespasser.
This was a harsh rule with harsh results and over the years the courts created a number of exceptions. Thus for instance, distinctions were drawn between plaintiffs who were trespassers, licensees and invitees (see, e.g., Vaughn v Transit Development Co., 222 NY 79), with trespassers being further subdivided into discovered and undiscovered trespassers (Ansteth v Buffalo Ry. Co., 145 NY 210; cf. Lo Casto v Long Is. R. R. Co., 6 NY2d 470). Defendants were divided into owners and non-owners (Constantino v Watson Contr. Co., 219 NY 443; Ferrari v New York Cent. R. R. Co., 250 NY 527; Cavanaugh v Peoples Gas & Elec. Co., 260 NY 547; Ehret v Village of Scarsdale, 269 NY 198); the subspecies being nonowners using the premises for their own convenience (Wittleder v Citizens’ Elec. Illuminating Co., 50 App Div 478) and nonowners acting on the owner’s behalf (Ireland v Complete Mach. & Equip. Co., 174 Misc 91; Gold v Rosenblatt, 1 AD2d 894).
There was a basic distinction drawn between injuries caused by active negligence, i.e., dangerous activities (Barry v New York Cent. & Hudson Riv. R. R. Co., 92 NY 289; Byrne v New York Cent. & Hudson Riv. R. R. Co., 104 NY 362) and passive *441 negligence, i.e., dangerous conditions (Nicholson v Erie Ry. Co., 41 NY 525; Sutton v New York Cent. & Hudson Riv. R. R. Co., 66 NY 243; Larmore v Crown Point Iron Co., 101 NY 391; Walsh v Fitchburg R. R. Co., 145 NY 301, supra; Mendelowitz v Neisner, 258 NY 181, supra; Carbone v Mackchil Realty Corp., 296 NY 154). The variations included mere defects (Cusick v Adams, 115 NY 55; Mendelowitz v Neisner, supra; Garthe v Ruppert, 264 NY 290) and inherently dangerous conditions (Kingsland v Erie County Agric. Soc., 298 NY 409; Mayer v Temple Props., 307 NY 559), dangerous conditions obvious to the owner and those not obvious to the owner (Larmore v Crown Point Iron Co., supra; Mendelowitz v Neisner, supra), dangerous attractions on private premises (Walsh v Fitchburg R. R. Co., supra) and dangerous attractions on the public highway (Tierney v New York Dugan Bros., 288 NY 16).
Many of these distinctions were undoubtedly based on considerations which have some probative value in terms of the general theory of tort liability. Thus it has been noted that the distinction between "active” and "passive” negligence was probably based on the notion that it was generally easier and thus more reasonable to expect a landowner to abate an activity than it is to correct a dangerous condition existing on the property (Hughes, Duties to Trespassers, 68 Yale LJ 633, 698). This may well be true in most cases but certainly not in all and to turn it into an immutable rule applicable in all cases, once again, permits the legal fiction to dominate the facts.
Under the standard of reasonable care adopted by the court today the factors which sustained the landowner’s immunity and inspired the exceptions under prior law will no longer be considered decisive. But, as indicated, most of them have some probative value and to that extent they will continue to have some relevance in determining whether, under all the facts and circumstances, there has been a breach of duty.
The fact that the injury occurred on the defendant’s property is certainly a relevant circumstance in assessing the reasonableness of the defendant’s conduct. The defendant has the right to use his property and to develop it for his profit and enjoyment. That often means that he must conduct dangerous activities or permit dangerous instruments and conditions to exist on the premises. However under those circumstances he must take reasonable measures to prevent injury to *442 those whose presence on the property can reasonably be foreseen. Whether the threat is posed by a dangerous condition or a dangerous activity is of little significance in itself. It may have some bearing on the effort required to prevent the injury, but that depends on the facts of the particular case. In this connection it is important to note that the elimination of the immunity conferred by prior law should not pose an unreasonable burden on the use of the property since all that is now required is the exercise of reasonable care under the circumstances (Basso v Miller, 40 NY2d 233, 241, supra). The defendant can always show that it would have been unduly burdensome to have done more (see 2 Harper and James, Torts, p 1437).
The fact that the plaintiff entered without permission is also a relevant circumstance (Basso v Miller, supra, p 241). It may well demonstrate that the plaintiff’s presence was not foreseeable at the time and place of the injury. However the likelihood of one entering without permission depends on the facts of the case including the location of the property in relation to populated areas, its accessibility and whether there have been any prior incidents of trespassing in the area where the injury occurred. The age of the plaintiff is also significant in view of the "well-known propensities of children to climb about and play” (Collentine v City of New York, 279 NY 119, 125). And, of course, the fact that the entry was unauthorized may be of little or no importance if the plaintiff’s presence was discovered by the owner in time to avoid the injury.
This does not mean that every case involving injury on private property raises a factual question for the jury’s consideration. In any negligence case the court must always determine as a threshold matter whether the facts will support an inference of negligence or lack of negligence (Basso v Miller, 40 NY2d 233, supra; cf. Andre v Pomeroy, 35 NY2d 361). However in this particular case the question of the reasonableness of the parties’ conduct cannot be resolved as a matter of law.
In sum, several of the factors considered decisive under prior law may be usefully integrated into the general theory of tort liability so as to provide standards and guidelines in determining a landowner’s liability. With this in mind the order of the Appellate Division should be modified by reversing and granting a new trial with respect to all defendants *443 except the Metropolitan Transit Authority and the Long Island Railroad Co., and affirmed as to them.