Fuchsberg, J.
This is the first case of an injured social guest to reach us since we abandoned resort to common-law classifications as the conclusive determinant of a land occupier’s duty to entrants on property based on whether they were to be regarded as licensees, invitees, trespassers or members of any of their patchwork of subclassifications, adopting in its place a "single standard” under which liability is to be measured by what is "reasonable care under the circumstances” (Basso v Miller, 40 NY2d 233, 241; Scurti v City of New York, 40 NY2d 433, 437).
Plaintiff Loretta Quinlan, then a 17-year-old high school senior, fractured her skull when she fell down a flight of stairs in defendants’ one-family house. At the conclusion of the testimony, the trial court took the case from the jury and dismissed it on the ground that Loretta and her father, the latter suing derivatively, failed to prove either any actionable negligence on the part of the defendants or Loretta’s freedom from contributory negligence.* The Appellate Division affirmed on the ground that a social guest is to take "the premises as the guest finds them”, a statement which, while categorically correct pre-Basso, is no longer the law. For the reasons which follow, we find that plaintiffs made out a prima facie case and that there must be a new trial.
To reach that determination, we turn first to the facts, viewing the evidence, as we must in the present procedural posture of the case, in the light most favorable to the plaintiffs (Parvi v City of Kingston, 41 NY2d 553, 554).
After school recessed on the day she was injured, Loretta accompanied her classmate Anna Cecchini to the home of Anna’s parents, the defendants. The young ladies were going to attend a dance that evening and Loretta had been invited to spend the night at the Cecchini home. This was her first visit there. Upon their arrival at the Cecchini residence, they entered by the front door. After dining with Anna’s parents, they drove to the dance and, returning at about 12:30 a.m., Anna led the way to the side entrance door which she proceeded to unlock. An outdoor light fixture alongside the door *688 was not on; street lights provided the illumination which enabled Loretta to see the side of the house.
Upon being opened, the door swung toward the left into a small vestibule only about three feet square. Two lights switches were located on the left vestibule wall against which the door came to rest; one switch controlled the overhead vestibule light and the other the outside light, but both switches were concealed and rendered inaccessible by the opening of the door. Opposite the entranceway were some steps leading up to the kitchen. As one faced into the vestibule from the outside, the edge of the top landing of a stairway leading to the basement was located at a point only four inches to the right of the vestibule. A qualified expert called by the plaintiffs characterized this arrangement as "architecturally unsound”, particularly because of the door’s obstruction of the switch which controlled the light that would have revealed the presence of the stairwell.
As Anna opened the side door, she let Loretta step into the vestibule first. There were no lights on in the house; the vestibule was, in Loretta’s words, "pitch-dark”. She "couldn’t see anything” except the wall diagonally opposite the doorway and, accordingly, stood still on the right while waiting for Anna to enter. Though Loretta was then dangerously close to the staircase, the absence of light made her unaware of that fact. Then, as Anna entered on the left side of the vestibule, she inadvertently brushed against Loretta who "put one foot back” in order that Anna "would have more room”, whereupon she fell down the stairs, losing consciousness as she struck the bottom.
In essence, four points are urged upon us by the defendants to sustain the dismissal. These are: that the unlit small vestibule with the open staircase adjacent to it was not a trap or hidden danger, that in any event the defendants acted with reasonable care under the circumstances, that the fall down the stairs was not the proximately produced result of the defendants’ negligence and that plaintiff’s own negligence was the cause of the occurrence.
If the traditional system of classifications still prevailed, since, Loretta Quinlan was not a business visitor but only a social guest, we would be enmeshed in the decision of such questions as, for instance, whether the defendants afforded the plaintiff the protection owed to "the members of their own family” and perhaps how such a duty is to be applied prag *689 matically (Krause v Alper, 4 NY2d 518, 520) or, as defendant suggests is pertinent here, whether or not the arrangement of the vestibule constituted a "trap or hidden danger” (Wilder v Ayers, 2 AD2d 354, affd 3 NY2d 725). The "single standard of reasonable care” rule no longer so confines us. Our primary concern has now been shifted from the status of the plaintiff to the conduct of the defendant. Specifically, those facts which at one time might have tended to establish a "hidden danger” are now subsumed in the broader consideration of whether there has been reasonable care.
Similarly, the factual props which formerly determined status are not irrevelant in the determination of foreseeability and the expectation of care which a particular social guest would expect of a particular host (Peterson v Balach, 294 Minn 161; cf. Scurti v City of New York, 40 NY2d 433, supra). But they too are now encompassed by the all-embracing standard of reasonable care, compliance with which is to be judged by a defendant’s conduct in the totality of all the prevailing circumstances.
Of course, it is still the trial court which, in the first instance, must determine whether the facts will support a negligence finding as a matter of law (Basso v Miller, 40 NY2d 233, 242, supra). The traditional role of the court in setting the perimeters of negligence did not disappear with the abolition of the uncompromising common-law classifications. It remains the court’s duty to examine the facts of each particular case for that purpose. On that inquiry, it may consider whether the foreseeability of the presence of an entrant on land is too remote, given the nature of the risk and the burdens that would be imposed on a landowner to guard against it. It is also concerned with the weighing of the probability of the harm, the gravity of the harm against the. burden of precaution, and other relevant and material considerations from which it can determine whether reasonable persons can differ as to whether the defendant was negligent (see Weiner, The Civil Jury Trial and the Law-Fact Distinction, 54 Cal L Rev 1867, 1882-1883; James, Functions of Judge and Jury in Negligence Cases, 58 Yale LJ 667, 676-677). As in all such cases, "[t]he range of reasonable apprehension is at times a question for the court, and at times, if varying inferences are possible, a question for the jury” (Palsgraf v Long Is. R. R. Co., 248 NY 339, 345 [Cardozo, Ch. J.]; see, also, Peterson v City of New York, 267 NY 204 [Loughran, J.]).
*690 Measured by these criteria, it is clear that the present case should have been permitted to go to the jury, whose province it would have been, after evaluating the proof, to determine whether in fact there was or was not a lack of ordinary care in the management of the premises at the time and place in question (Cooper v Goodwin, 478 F2d 653, 656 [Bazelon, Ch. J.]). For there was ample proof from which it could be found that the defendant should reasonably have foreseen that, under the conditions which prevailed, it was only a matter of time until someone might be injured. The defendants were aware that their daughter and her friend would return to the house after nightfall and that one of the means of access was through the side door. Yet they left the lights out. It could readily be found that they should have foreseen the nature of the risk that would flow from the absence of light in the path of Loretta as she entered the house after dark, particularly in view of the location of the switch at a point where the young women Would be compelled to traverse a dark area before they could reach a position from which the door must be closed. It would also have been reasonable to find that the defendants were aware or should have been aware of Loretta’s total unfamiliarity with the premises and especially with the proximity of the cellar stairway at a point where a single misstep could bring serious injury. Nor can it be said as a matter of law that it would have been a severe or disproportionate burden for them to have removed the hazard; a relocation of the switch, a rehanging of the door, a gate across the stairwell, a mere leaving on of the lights—any one of these may have sufficed.
Nor can it be said that Loretta herself was contributorily negligent as a matter of law. Crediting her testimony, the jury well could have found that it was perfectly reasonable for her to rely on the guidance of Anna, who, having lived there for 14 years, could be presumed to know that no unusual hazards presented themselves or, if danger lurked, to know it well enough to give warning (cf. Amaro v City of New York, 40 NY2d 30, 37; Wolf v City of New York, 39 NY2d 568, 574). Furthermore, Loretta stopped as soon as she was in the vestibule. It would have been reasonable for her to expect Anna to then turn on the lights. Instead, the arrangement of the door vis-á-vis the switches compelled Anna to move alongside of her and thus precipitate the movement without which the fall might not have taken place. In the end, the question *691 was whether Loretta’s use of the premises at the time of the accident was reasonable under all the circumstances. That was clearly a question of fact. (See, generally, James, Tort Liability of Occupier of Land: Duties Owed to Licensees and Invitees, 63 Yale LJ 606, 630.)
Finally, the consideration of whether the circumstances in this case were sufficient to make out a prima facie case is not unrelated to the issue of proximate cause as well. For what reasonable care requires of a landowner may both be determined by and be determinative of the question as to whether the activity of an injured entrant on land was an intervening cause of an accident. Foreseeability bears on both issues. Here the owner, concededly, had reason to know that the young women, including one who was a stranger to the house, would have to obtain access to it at night. Under all the circumstances here, proximate cause too was at least a question of fact (Pagan v Goldberger, 51 AD2d 508).
Accordingly, the order of the Appellate Division should be reversed and a new trial ordered, with costs to abide the event.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Cooke concur.
Order reversed, etc.

 Comparative negligence does not apply to cases accruing prior to September 1, 1975 (CPLR 1411, 1413). The case here accrued before then.