PAUL E. HOLDEN, Individually and as Parent and Natural Guardian of JAMES A. HOLDEN, an Infant, Plaintiff, v JOSEPH M. BOYLE et al., Defendants. JOSEPH M. BOYLE et al., Third-Party Plaintiffs-Respondents, v ROCHESTER TELEPHONE CORPORATION et al., Third-Party Defendants-Appellants.

Fourth Department, May 15, 1981

APPEARANCES OF COUNSEL

*Chamberlain, D'Amanda, Bauman, Chatman & Oppenheimer (Daniel Overbeck* of counsel), for People's Cable T.V., appellant.

*Nixon, Hargrave, Devans & Doyle (Harold A. Kurland* of counsel), for Rochester Telephone Corporation, appellant.

*Culley, Marks, Corbett, Tanenbaum, Reifsteck & Potter (Merle Troeger* of counsel), for respondents.

#### OPINION OF THE COURT

SCHNEPP, J.

Rochester Telephone Corporation (RTC) and the Fair-

port Municipal Commission jointly own a 35-foot utility pole located on the northeast corner of property owned by Joseph and Ruth Boyle. Also on the Boyle property was a large poplar tree adjacent to the pole. Four utility lines attached to the pole passed through the branches of the tree. The Fairport Municipal Commission owned a 2,400-volt uninsulated primary electric line which was attached to the top of the pole and a 240-volt secondary electric line which was located about 4 feet below the primary line. At least 5 feet below the primary line was a transmission cable owned by People's Cable TV (People's Cable), below which, but at least 8 feet above the ground, was strung a telephone line owned by RTC. On July 24, 1978 seven-year-old James Holden climbed the poplar tree to a height which was about even with the top of the utility pole when he reached up for another branch and instead touched the 2,400-volt power line. He received an electrical shock with resultant serious injury to his left hand.

Actions to recover damages were commenced against the Boyles, the Village of Fairport and the Fairport Municipal Commission. The Boyles then instituted a third-party action against RTC and People's Cable, alleging that those corporations owned and controlled the poles and the electric wires which passed through the tree on the Boyle property and that it was the obligation and responsibility of these third-party defendants to properly inspect the said electrical wiring and to trim and maintain the tree. People's Cable also asserted a cross claim against RTC. Both third-party defendants moved for summary judgment and RTC also moved to dismiss the cross claim brought by People's Cable. This appeal results from a denial of these motions.

At an examination before trial representatives for the various companies testified that each company was solely responsible for maintaining its own wires including any necessary tree-trimming. The condition of the pole was not a factor in causing the injury to the child. The only question raised concerned the allocation of responsibility for trimming branches away from the wires. A representative of the Fairport Municipal Commission testified that his company had easements allowing it to trim trees whenever necessary. RTC's representative testified that the telephone company

only trimmed branches away from its own lines which presented a negligible danger of shock. A joint use contract between RTC and Fairport Municipal Commission regarding use of the pole provides that attachments placed on poles shall "be kept in a safe condition" and that "Each party at its own expense shall trim trees to clear its own facilities". A representative of People's Cable testified that his company was aware of the high tension wire and directed its employees to stay at least 5 feet away from that line when hanging its own line. He also testified that its line, while it carried a charge of 60 volts, was fully grounded and could not transmit a shock to anyone touching it. He stated that his company trims trees only to protect its cable from damage. No record was produced by any party that the tree in question had been trimmed by defendants, although the infant plaintiff testified that some lower branches had been cut off.

Third-party plaintiffs assert that the child was injured not because he touched either of the cables belonging to the third-party defendants but because he was able to gain access to the 2,400-volt electrical line by climbing the untrimmed branches around the telephone and cable television lines. Thus, it is argued that these third-party defendants were guilty of actionable negligence requiring a factual determination based on the single standard adopted in *Basso v Miller* (40 NY2d 233, 241), that is, "reasonable care under the circumstances whereby foreseeability shall be a measure of liability." It is contended that both third-party defendants knew that on the same pole with their lines was a 2,400-volt electrical line that could cause injury to a person who touched it, that both were familiar with the well-known hazards and danger of exposure to the high voltage line and that foreseeability of injury to someone near the line was clear to them.

Liability is predicated on the theory that it was a foreseeable consequence of third-party defendants' failure to trim the lower branches of the tree nearest the telephone and television lines that someone would climb the tree as high as the 2,400-volt power line by using the untrimmed branches and become injured. Thus, the issue is whether

either or both of these third-party defendants may be held liable for failing to trim branches away from their respective wires because either their own wires presented a danger or they had a duty to limit access to the high voltage line by trimming the branches under their control nearest to their wires so that a child could not have then climbed high enough to reach the power line. This issue raises the question as to whether failure to trim the tree was a proximate cause of this accident. Whether a jury may be allowed to consider that question, however, depends on whether either defendenat did in fact have a duty to trim the tree in order to prevent harm to infant plaintiff.

In cases involving the duty of landowners toward persons found on their property, New York has abandoned the distinctions concerning the status of such persons as trespasser, licensee and invitee and, as third-party plaintiff points out, has adopted "a single standard of reasonable care under the circumstances whereby foreseeability shall be a measure of liability" *(Basso v Miller,* 40 NY2d 233, 241, *supra).* Utilities have an affirmative duty to exercise reasonable care in the operation and maintenance of their power lines, and the degree of precaution required is largely a function of the inherent danger to the public of coming into contact with lines and "there is, to be sure, a correspondingly higher duty of care owed as higher voltages are transported" *(Miner v Long Is. Light. Co.,* 40 NY2d 372, 379). Where a duty is established, foreseeability is a measure of liability. "In such a case, it can thus be said that foreseeability is a limitation on duty" *(Pulka v Edelman,* 40 NY2d 781, 786; see *Palsgraf v Long Is. R. R. Co.,* 248 NY 339, 344).

In the instant case third-party defendants reasonably discharged their duty without trimming the tree. The undisputed testimony at the examination before trial established that the telephone line presented a negligible risk of shock to persons coming into contact with it and the cable television line presented no risk at all. Although the law recognizes the "well-known propensities of children to climb about and play" *(Collentine v City of New York,* 279 NY 119, 125), it was not foreseeable that a child climbing the poplar tree on the Boyle property would be hurt

by coming into contact with either the telephone or cable television lines since they were harmless. Plaintiff, in fact, was not hurt by either of those lines. Since there was no foreseeable risk of harm to climbers arising from contact with third-party defendants' own wires, there was no duty to protect tree climbers, be they children or not, and there can be no liability for not trimming the tree. Each third-party defendant had a right to trim the trees growing along the path of its wires, but they exercised that right only to protect their lines from damage caused by chafing when branches touched the wires. It would be illogical to transform that right, which is appurtenant to the easement, into a duty to trim branches from trees for the protection of young climbers to whom there is no foreseeable risk of injury.

Third-party plaintiffs would seek to impose a duty on anyone with an interest in real property to take affirmative steps to prevent their property from being used as a point of access to property which they have reason to believe poses a potential danger to the public. They cite as authority a number of cases in which a duty was imposed on municipalities for failing adequately to fence in playgrounds so as to prevent access to adjoining railroad property. In each of the cases children left the playgrounds and were seriously hurt or killed while playing in the adjoining railroad yards (see *Scurti v City of New York*, 40 NY2d 433; *Leone v City of Utica*, 66 AD2d 463, affd 49 NY2d 811; *Lukasiewicz v City of Buffalo*, 55 AD2d 848). In each of these cases, however, the municipalities operated playgrounds and invited children to play in them. The cities then either negligently maintained or failed to erect fences between the playgrounds and adjoining railroad property. In each case the cities knew or should have known that children were leaving the playgrounds to play near or on the trains. In *Scurti v City of New York (supra)*, for instance, four other children had been electrocuted, two of them within two months of Scurti's death.

In the cited cases the issue of the existence of a duty never arose. The only issue was whether the actual harm was encompassed by the duty, i.e., whether it was foreseeable. The cities were not insurers of the children's safety, but

nevertheless by choosing to operate playgrounds in an area adjacent to property as attractive as a railroad they assumed some responsibility to see that the railroad yards did not become extensions of the playground. However, the instant case, in any event, is distinguishable from such cases. First, while a tree may challenge a seven year old to climb it only because it's there, simply owning a climbable tree is not the equivalent of operating a public playground. Second, the third-party defendants did not own the poplar tree but merely had a license to trim branches in order to make a clear path for the cables. Nor did they own or control the cable which injured the infant plaintiff. Finally, it would impose an enormous burden on third-party defendants with little benefit to the public to require them to trim the branches away from relatively harmless wires on every climbable tree which is in the path of an easement shared with an electric company whose wires do pose potential danger to the public.

The existence of a bona fide issue raised by evidentiary facts and not based on conclusory or irrelevant allegations is necessary to defeat summary judgment *(Rotuba Extruders v Ceppos,* 46 NY2d 223; *Muller v Sturman,* 79 AD2d 482; *Goldstein v County of Monroe,* 77 AD2d 232, 236). In this case third-party plaintiffs have failed to show evidentiary facts to establish a duty on the part of the third-party defendants to trim the tree in question sufficient to require a trial of any issue of fact, i.e., whether there was a breach of duty which was the proximate cause of infant plaintiff's injury (CPLR 3212, subd [b] ; see *Zuckerman v City of New York,* 49 NY2d 557; *Freedman v Chemical Constr. Corp.,* 43 NY2d 260; *Basso v Miller,* 40 NY2d 233, 242, *supra).*

Since the third-party action against People's Cable should be dismissed, its cross claim against RTC should also be dismissed as academic without reaching the merits.

Accordingly, the motions of the third-party defendants should have been granted and the third-party complaint and cross claim dismissed.

CARDAMONE, J. P., SIMONS, HANCOCK, JR., and DENMAN, JJ., concur.

Order unanimously reversed, without costs, motions granted and third-party complaint and cross claim dismissed.