Simons, J.
(dissenting). The majority holds that one injured by another’s fault while engaging in allegedly criminal conduct may not be permitted access to the civil courts to recover damages for his injuries. There are several objections to such a rule. First, it is based upon a decision which is distinguishable (Reno v D’Javid, 42 NY2d 1040), second, as the majority concedes, it does not always apply (see Corbett v Scott, 243 NY 66; Connolly v Knickerbocker Ice Co., 114 NY 104,108-109; Platz v City of Cohoes, 89 NY 219; and see Townsend v Commercial Travelers Mut. Acc. Assn., 231 NY 148), and third, the *33 majority has not told us when it does. Nor has it told us why all the issues in such a claim should be decided by the court as a question of law, rather than by the trier of facts as the Legislature provided in the comparative fault statute (CPLR 1411). In short, this decision permits the court to make a subjective ad hoc judgment on the severity of the plaintiff’s putative criminal conduct and then to apply a general principle to it, as if the principle was a rule of tort liability, to bar plaintiff’s claim.
The majority predicates its decision on Reno v D’Javid (42 NY2d 1040, supra). In Reno, the plaintiff suffered a perforated uterus when defendant performed an illegal abortion on her. The Appellate Division affirmed so much of the trial court’s ruling as dismissed the cause of action for medical malpractice, breach of warranty and assault, ruling that plaintiff’s participation in a criminal act barred judicial relief for injuries arising from that act (see Penal Law, §§ 125.50, 125.40). The decision was based on the principle that one should not profit from her own wrong (citing Riggs v Palmer, 115 NY 506, 511-512). This court, adopting the memorandum at the Appellate Division as its decision, affirmed, adding only that plaintiff had violated the “paramount public policy imperative” that the laws must be obeyed.
This case is factually and legally distinguishable from the Reno case. Reno dealt with an adult plaintiff and undisputed criminal liability for participating in an abortion. This plaintiff was 14 at the time of the accident, an age at which the majority concedes he cannot be held criminally responsible (Penal Law, § 30.00, subds 1, 2, as amd L 1978, ch 481, § 28; L 1979, ch 411, § 21; L 1981, ch 335, § 5). Notwithstanding this, the majority insists that because of the seriousness of his conduct, his claim is barred. A plaintiff should not be foreclosed from seeking civil relief, however, because of the illegal character of his act as distinguished from an actual finding of criminal liability. Particularly is this so when the plaintiff is an infant plaintiff or one lacking capacity for other reasons, those whom the criminal law treats differently from competent adults. The civil rules of tort liability require consideration of plaintiffs’ capacity. The violation of a statute *34 by an adult plaintiff constitutes culpable fault, while the same violation by an infant raises a question of fact as to whether the infant had the age, experience, intelligence and development to understand the meaning of the statute and to comply with it (PJI 2d, 2:49, p 191). That is the rule applied to 14-year-old bicycle riders injured while allegedly violating a statute (Gargano v Hanington, 40 AD2d 675; see, also, Poczkalski v Cartwright, 65 AD2d 945; Locklin v Fisher, 264 App Div 452) and if they are entitled to have a jury evaluate their understanding of the laws relating to the use of something as commonplace and familiar as a bicycle, then a 14-year-old boy ought to have the benefit of a similar factual determination when handling firecrackers or explosives.
Moreover, the Reno decision was based upon Riggs v Palmer (115 NY 506, supra) and that decision is inconsistent with the policies underlying present tort law. In Riggs, a legatee who murdered a testator was not allowed to inherit under the testator’s will even though he was the named beneficiary. In denying the inheritance, this court relied upon the fundamental principle of public policy that one may not profit from his own wrong (115 NY, at pp 511-512). As our later decisions demonstrate, however, the application of the principle has been restricted to preventing unjust enrichment in cases of competing claims to real or personal property (see Spivak v Sachs, 16 NY2d 163 [plaintiff barred from recovery for services rendered pursuant to an illegal contract to practice law]; McConnell v Commonwealth Pictures Corp., 7 NY2d 465 [plaintiff prohibited from enforcing lawful contract because he had committed acts of bribery in performing his obligations under the agreement]; Carr v Hoy, 2 NY2d 185 [plaintiff barred from asserting any rights to moneys seized by law enforcement officers because they were obtained as a result of criminal conduct]; Stone v Freeman, 298 NY 268 [counterclaims based upon illegal agreements held to be unenforceable]; Flegenheimer v Brogan, 284 NY 268 [plaintiff spouse barred from inheriting shares of decedent’s brewery when she wrongfully concealed his ownership interest in it]). No New York tort case other than Reno has been brought to our attention in which Riggs was relied upon or *35 even cited. A few other States have applied the Riggs principle in torts but those decisions have been described as contrary to the compensatory theory of torts and as “a barbarous relic of the worst there was in puritanism” (2 Harper and James, Torts, § 17.6, pp 995-997; see, also, Prosser, Torts [4th ed], pp 421, 422).
A plaintiff’s unlawful conduct has never been applied consistently in New York to foreclose plaintiff’s recovery. Thus, in Corbett v Scott (243 NY 66, supra), a 16-year-old infant plaintiff was not denied recovery for his injuries when he had an accident while driving a motorcycle in violation of two statutes. In Connolly v Knickerbocker Ice Co. (114 NY 104, supra), an infant plaintiff riding unlawfully on the platform of a trolley was not denied recovery for the injuries he sustained when the trolley was involved in an accident. In Platz v City of Cohoes (89 NY 219, supra), a plaintiff injured while violating the laws prohibiting driving a carriage on Sunday was permitted to recover (see, also, Carroll v Statenls. R. R. Co., 58 NY 126). Similarly, plaintiff’s criminal conduct has not been used to foreclose access to the courts for reckless or drunken drivers (see Humphrey v State of New York, 60 NY2d 742, 744) or those guilty of criminal trespass when injured by a landowner’s fault (see Scurti v City of New York, 40 NY2d 433). The majority maintains liability will be foreclosed if the conduct is “serious” — the concurring opinion would apply the rule only if the conduct was “egregious” — and the injury the direct result of plaintiff’s unlawful conduct. The plaintiffs have been permitted to recover in the cited cases, however, not because the conduct was not serious, but because of the lack of causal connection between it and the damage sustained (see, generally, Davis, Plaintiff’s Illegal Act as a Defense in Actions of Tort, 18 Harv L Rev 505; 2 Harper and James, Torts, § 17.6; Prosser, Torts [4th ed], p 421). A plaintiff’s right to maintain an action, however, should not rest on a Judge’s subjective view of whether the conduct is serious or egregious: Judges will differ in making such an evaluation. Indeed the Judges of this court disagreed on the “seriousness” of the plaintiff’s conduct in Reno, as they do here. As for causation, that is a fact question in almost all cases (see Wartels v County *36 Asphalt, 29 NY2d 372,379-380). Particularly is it so in this case in which the pleadings and the evidence demonstrate that the wrongful conduct of the parties acted simultaneously in causing plaintiff’s injuries. Neither of these issues should be decided on a motion for summary judgment.
There is another problem in applying the Riggs principle to questions of tort liability. It runs counter to the rule of comparative fault and the policy interests underlying that rule because Riggs produces an “all or nothing” result which precludes the wrongdoer from seeking judicial relief. When this “all or nothing” approach is applied to tort liability, it is, as one court has said, only another form of contributory negligence (see Galena & Chicago Union R. R. Co. v Jacobs, 20 Ill 478, 491). The analogy is apt because under the rule of contributory negligence, when a plaintiff’s act or omission contributes in any way to his injuries, he is barred from pursuing a claim against a defendant notwithstanding defendant’s partial responsibility for the injuries. The majority’s application of the Riggs maxim has a similar result — it forecloses the plaintiff from judicial relief when the court determines that he has been guilty of criminal conduct contributing to his injuries.
This is a return to the old “admonitory” theory of tort liability, the idea that a defendant was liable to the plaintiff because of his blameworthiness or fault. The rationale of that theory, in its pristine form, was that because the conduct of the defendant may have fallen short of criminal activity the injured party should be given satisfaction, and the wrongdoer “punished”, by a civil remedy of damages in tort. Because this admonitory or punitive function was paramount, a plaintiff who was also guilty of blameworthy conduct was similarly punished by being denied relief. Both parties being at fault, the courts refused to measure their wrong and let the losses lay where they fell. The rigors of such a rule soon became apparent and the law moved towards a compensatory theory of tort law which led to the principle of comparative liability set forth as early as the turn of the century in statutes such as the first Federal Employees Liability Act, followed by the Jones Act, the Merchant Marine Act and eventually the comparative *37 negligence statutes enacted in several States (see, generally, White, Tort Law in America, pp 164-165). Contemporaneously, the courts have moved to develop the common law along similar lines (see, e.g., Scurti v City of New York, 40 NY2d 433, supra; Codling v Paglia, 32 NY2d 330; Dole v Dow Chem. Co., 30 NY2d 143). The ultimate proof of the ascendancy of the compensatory view of tort liability is expressed in our no-fault automobile liability laws (Insurance Law, art 18).
New York adopted comparative fault by a statute passed in 1975 (L 1975, ch 69). It provides that the culpable conduct attributable to the claimant shall not bar his recovery, only diminish it in the proportion which it bears to the culpable conduct of the defendant. The statute makes no exceptions for intentional acts or even criminal ones but applies alike to all culpable conduct, not just negligence (CPLR 1411; see Thirteenth Ann Report of NY Judicial Conference to Legislature on CPLR, Part I-Comparative Negligence, § 10-101 [proposed amdt to General Obligations Law], comment [b] [in Twenty-first Ann Report of NY Judicial Conference, 1976, p 240]). Thus, the statute provides the vehicle for evaluating plaintiff’s conduct, whether it caused his damages and if so in what degree. It prevents a plaintiff from profiting from his own wrong because he can recover only the amount of his damages attributable to defendant’s culpable conduct. In doing so, it provides a workable rule of law which reconciles the Riggs principle with the competing principle that a party injured by the fault of another is entitled to compensation.
The decision of the majority ignores this history and effectively nullifies the statute in cases in which the plaintiff is arguably guilty of violating a penal statutory provision. It asserts that the principle applies because the wrong transcends contributory negligence or the comparative fault statute. The Riggs principle, however, is not a rule of law necessitating a particular result, although the majority has applied it as if it were. It states a reason that argues in only one direction and, as such, it must compete with other inconsistent principles (see Dworkin, Model of Rules, 35 U of Chi L Rev 14, 26). In the past when we have *38 foreclosed relief on public policy grounds, we have done so under circumstances in which objectively determinable facts made application of the rule certain and consistent (see De Angelis v Lutheran Med. Center, 58 NY2d 1053 [no cause of action by child for loss of parents’ consortium]; Smith v Sapienza, 52 NY2d 82 [no cause of action for negligent supervision by child against parent]; Becker v Schwartz, 46 NY2d 401 [no cause of action for “wrongful life” by brain-damaged child against the doctor who delivered her]; Howard v Lecher, 42 NY2d 109 [no caüse of action against doctor for mental distress and emotional disturbance resulting from negligence resulting in birth of fatally ill child]; Holodook v Spencer, 36 NY2d 35 [no cause of action for negligent supervision by child against parent]). The present decision cannot be similarly contained. It is subject not only to varying personal evaluations of the plaintiff’s conduct by different Judges but also to changing social perceptions of what constitutes serious or hazardous criminal activity. The irony of Reno was that the plaintiff was denied recovery solely because her injuries were sustained during an abortion which was illegal when performed but which would not have been illegal if performed four weeks later. If the majority chooses to decide this case on grounds of public policy by applying a general principle, then the obligation rests upon it to define the rule and set forth the limitations on it (see Hopkins, Public Policy and the Formulation of a Rule of Law, 37 Brooklyn L Rev 323, 336). It has failed to do so, however, stating only that “[t]he rule * * * would not apply in every instance where the plaintiff’s injury occurs while he is engaged in illegal activity”, only when it “is a direct result of his knowing and intentional participation in a criminal act” (majority opn, at p 25), which involves risk of harm to the public (majority opn, at p 29; concurring opn, at p 32). Curiously, the rule as stated would not have prevented recovery in the only case the majority relies upon (see Reno v D’Javid, 42 NY2d 1040, supra). Nor does the regulated-prohibited test withstand analysis. For example, drunken driving is prohibited criminal conduct but it does not foreclose an action by the drunken driver for damages sustained in an accident with another.
*39 To support this new formulation, the majority rely upon Comment b of section 889 of the Restatement of Torts, Second. Section 889 makes no distinction, however, between serious crimes and others. It provides that “[o]ne is not barred from recovery for an interference with his legally protected interests merely because at the time of the interference he was committing a tort or a crime.” It is interesting to note that this section of the Restatement was also relied upon by the Oregon Court of Appeals in a case remarkably similar on the facts to this one in which the court refused to dismiss the complaint of an infant plaintiff who was injured while making a pipe bomb and permitted the question to be decided by the jury as the question of causation should be (see Ashmore v Cleanweld Prods., 66 Ore App 62; see, also, Siess v Layton, 417 SW2d 6 [Mo]).
In sum, the Riggs maxim and this court’s statement in Reno that parties must obey the law are proper considerations of social policy which work satisfactorily in equitable actions, but they hardly provide a workable rule of law in the field of tort liability and should not be so applied.
This decision will have a substantial impact upon New York’s personal injury litigation. In any case in which the plaintiff is allegedly guilty of any of the thousands of penal provisions contained in the various statutes of this State he will be denied access to the civil courts if, after examining the motion papers, a Judge decides the factual questions involved on the issues of whether (1) plaintiff’s conduct was criminal, and if so, whether it was “serious” and presented a risk of physical harm to the public, (2) plaintiff possessed the mental capacity to be held to the same standards of conduct as a competent adult and (3) plaintiff’s conduct was the proximate cause of the injury. Having resolved these issues against the plaintiff and in effect tried the lawsuit on affidavits, he may dismiss the complaint. Perhaps, as a matter of social policy, this is an appropriate type of additional punishment to be imposed on putative wrongdoers, but if so, the Legislature should say so, not the courts. Instead the majority, by refusing to distinguish between legal cause and cause in fact and after a highly selective review of the facts, has made a moral judgment that this particular plaintiff is not entitled to *40 such relief because he is something of an “outlaw”. (See 2 Harper and James, Torts, § 17.6, p 995.)
Accordingly, I dissent and would vote to reverse the order granting summary judgment.
Chief Judge Cooke and Judges Jones and Kaye concur with Judge Wachtler; Judge Jasen concurs in a separate opinion; Judge Simons dissents and votes to reverse in another opinion in which Judge Meyer concurs.
Order affirmed, with costs.