SIMONE WATERS et al., Appellants, v NEW YORK CITY HOUSING
AUTHORITY, Respondent.

Second Department, April 21, 1986

## APPEARANCES OF COUNSEL

*Karpas & Hirshman (Stephen Levine* of counsel), for appellants.

*Gladstein & Isaac (Irving Rosen* and *Robert L. Boydstun* of counsel), for respondent.

**OPINION OF THE COURT**

WEINSTEIN, J.

Presented for our determination herein is the question of whether the defendant, a public authority organized and existing pursuant to the laws of this State, is liable in negligence for the injuries occasioned to a passerby who was accosted at knifepoint by an unknown individual on a public street and compelled to accompany him to a nearby building, which happened to be a New York City Housing Authority project. Inasmuch as a finding of liability would be tantamount to imposing upon the defendant a liability for criminal acts against a passerby brought upon the defendant's premises by a criminal who chose to utilize the defendant's property for his nefarious deeds, a duty which cannot reasonably be found to exist, we affirm the order granting the defendant's motion for summary judgment.

The facts are essentially undisputed. On the morning of July 25, 1982, the infant plaintiff, who was then a junior in high school, was accosted at knifepoint by an unknown individual on a public sidewalk. Said individual directed that she accompany him into a nearby building which happened to be a New York City housing project. The perpetrator gained access to the building via an unlocked door. Once inside, he took the infant plaintiff's money and forced her into an elevator and up to the roof where he sexually assaulted and sodomized her. The incident lasted for approximately 25 minutes. After threatening to kill her if she made any noise or did not remain in the premises for 10 minutes, the assailant fled. The infant plaintiff thereafter proceeded to her grandmother's house at another address, and was ultimately taken for emergency medical treatment to a nearby hospital where she related the incident to the police. The assailant was not apprehended.

The infant plaintiff and her father instituted this action against the New York City Housing Authority alleging, *inter alia,* negligence in the maintenance and control of its real property and the appurtenances thereto by failing to properly and adequately secure the same. The plaintiffs' investigator revealed that the front door locks had been broken, missing and nonfunctioning for a period of two years prior to the incident. Moreover, there had been at least five criminal events against tenants involving unauthorized entry into the building during this interval.

After issue was joined, the defendant moved for summary

judgment on the ground that it owed no duty to the infant plaintiff, who was neither a tenant, nor a guest, invited or uninvited, to protect her from the intentional actions of the assailant.

In granting the defendant's application for summary judgment, Special Term reasoned as follows: "[A] determination that the NYCHA was negligent in regard to the incident in question presupposes that their duty extends to any and all possible incidents (however remote) which might result in an individual taking advantage at any time, under any circumstances, of the fact that the NYCHA allowed a door to be unlocked in the early hours of the morning". Special Term was simply unwilling to stretch the concept of duty and liability to such extensive parameters.

Our decision herein is predicated upon a fundamental tenet of tort law, the concept of duty. A legal duty has been referred to as "a question of whether the defendant is under any obligation for the benefit of the particular plaintiff; and in negligence cases, the duty is always the same, to conform to the legal standard of reasonable conduct in the light of the apparent risk" (Prosser, Torts § 53, at 324 [4th ed]). The Court of Appeals has succinctly explained the concept of duty in the following terms: "Duty is essentially a legal term by which we express our conclusion that there can be liability * * * It tells us whether the risk to which one person exposes another is within the protection of the law" *(De Angelis v Lutheran Med. Center,* 58 NY2d 1053, 1055).

In order to have an actionable tort, a plaintiff must bring himself or herself within the scope of a definite legal obligation. "Negligence in the air, so to speak, will not do" (Pollock, Torts, at 468 [13th ed]).

In attempting to define limits which circumscribe legal duties, arbitrary distinctions are an inevitable result. In the quest for suitable definitions, not only logic and science but also considerations of public policy play an important role *(see, Bovsun v Sanperi,* 61 NY2d 219, 228; *De Angelis v Lutheran Med. Center, supra).*

It is well settled that there is a duty incumbent upon landlords to take minimal precautions to protect tenants against the reasonably foreseeable criminal activities of third parties on the landlord's premises *(see, Nallan v Helmsley-Spear, Inc.,* 50 NY2d 507, 517; *Miller v State of New York,* 62 NY2d 506, 513; *Sherman v Concourse Realty Corp.,* 47 AD2d

134; *Skaria v State of New York,* 110 Misc 2d 711; *Jacobs v Helmsley-Spear, Inc.,* 121 Misc 2d 910).

It has also been held that the status of the person injured on another's land is not the determinative factor in assessing the landowner's duty of care *(see, Basso v Miller,* 40 NY2d 233). Whether the injured party was a business invitee of the defendant's tenant or a visitor of some lesser status is merely one of numerous considerations which must be taken into account in ascertaining whether the risk of harm was foreseeable under the circumstances *(Nallan v Helmsley-Spear, Inc., supra,* at p 518; *Scurti v City of New York,* 40 NY2d 433, 442-443). In view of these tenets, it is clear that a duty of care does not devolve upon the defendant New York City Housing Authority with respect to all persons who regularly traffic the city streets and sidewalks.

Although there had been, prior to the subject incident, a number of tenant complaints concerning the broken front door lock as well as previous criminal incidents occurring inside the premises, this is not the sole determining factor in assessing liability against a defendant. As set forth by the Court of Appeals in *Nallan v Helmsley-Spear, Inc. (supra,* at p 519), quoting from the Restatement (Second) of Torts: "Of course, a possessor of land, whether he be a landowner or a leaseholder, is not an insurer of the visitor's safety. Thus, even where there is an extensive history of criminal conduct on the premises, the possessor cannot be held to a duty to take protective measures unless it is shown that he either knows or has reason to know from past experience 'that there is a likelihood of conduct on the part of third persons * * * which is likely to endanger the safety of the visitor' (Restatement, Torts 2d, § 344, Comment f)".

At bar, not only was the infant plaintiff not a visitor upon the premises, but there was also no reason to know from past experience of the presence of an assailant at some point near the premises who would endanger her safety to such a degree.

In any event, the concepts of foreseeability and duty are not to be equated. Foreseeability comes into play only after it has been determined that a duty of care exists *(see, Pulka v Edelman,* 40 NY2d 781, 785, *rearg denied* 41 NY2d 901). The mere fact that a consequence might foreseeably result from an action or condition does not serve to establish a duty running from a defendant to a plaintiff. In the absence of a duty, as a matter of law, there can be no liability *(see, Johnson v Ja-*

*maica Hosp.,* 62 NY2d 523, 528). Inasmuch as the plaintiffs have failed to demonstrate the existence of a special relationship giving rise to a duty of care owed by the defendant, the complaint is without legal basis *(see, Solomon v City of New York,* 66 NY2d 1026).

The potentially deleterious ramifications of allowing the plaintiffs' claim are enormous. Stated succinctly, our dissenting colleagues would impose an unreasonable duty upon those who own or control property to guard against the wanton acts against passersby on the street by third persons over whom the former exert no control whatsoever. As per this mode of reasoning, owners of private residences could conceivably be held liable for injuries received by a pedestrian who is forced into an unlocked dwelling and assaulted there by a third-party trespasser. Similarly, liability may extend to owners of large tracts of land at some point on which there is an unlocked gate or an opening in a fence, for injuries sustained by a passerby at the hands of a criminal. To subject property owners to such boundless liability is, in our view, grossly unfair.

As Special Term has aptly stated, "a determination that the NYCHA was negligent in regard to the incident in question presupposes that their duty extends to any and all possible incidents (however remote) which might result in an individual taking advantage at any time, under any circumstances, of the fact that the NYCHA allowed a door to be unlocked in the early hours of the morning". To sustain the plaintiffs' claim under these circumstances is to set the groundwork for dangerous precedent, i.e., that property owners who fail to secure their property with locks do so at their peril and risk liability to anyone injured thereby, regardless of the relationship. Recognition of the plaintiffs' claim would result in the imposition of an unfair onus upon a public corporation whose duty is not to insure public safety for those in no way connected with the property, but, rather, to provide housing for those in need.

Accordingly, the order granting the defendant's motion for summary judgment should be affirmed.

EIBER, J. (dissenting). Contrary to the view of the majority, this case centers not on the duty of a landlord to control the criminal acts of third parties, but, rather, on the duty of a landlord to maintain its premises in a reasonably safe condition. Because the majority would, contrary to established precedent, adopt a position which makes the status of an

entrant onto land the dispositive factor in determining whether a duty is owed to that party, because they have opted to draw a concededly arbitrary line of demarcation with respect to the scope of liability, and because the majority's holding would effectively usurp the power to determine issues which should properly lie within the province of the jury, I respectfully dissent.

In *Basso v Miller* (40 NY2d 233), the Court of Appeals abandoned, as out-moded, the rule that the relationship of the plaintiff to the property determines the extent of the duty owed by the owner or occupier of the land, and, in its stead, adopted a uniform standard of care, which requires landowners to take reasonable measures to prevent injury to all those whose presence on the property can reasonably be foreseen *(see also, Scurti v City of New York,* 40 NY2d 433). The traditional limitations on the landowner's duty, which had been based upon the entrant's status as a trespasser, licensee or invitee, were dispensed with in favor of a unitary standard which correlates the duty of care owed to the plaintiff with "the risk of harm reasonably to be perceived" *(see, Martinez v Kaufman-Kane Realty Co.,* 34 NY2d 819, 821). It is now firmly established that the manner in which a party comes upon property is no longer the "conclusive determinant of a land occupier's duty" *(see, Quinlan v Cecchini,* 41 NY2d 686, 687), and that a landowner must maintain his property in a reasonably safe condition " 'in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk' " *(Basso v Miller, supra,* at p 241, quoting from *Smith v Arbaugh's Rest.,* 469 F2d 97, 100, *cert denied* 412 US 939; *see also, Preston v State of New York,* 59 NY2d 997).

The principles originally enunciated in *Basso (supra)* were subsequently reaffirmed in *Nallan v Helmsley-Spear, Inc.* (50 NY2d 507). The plaintiff in *Nallan* was shot in the back by an unknown assailant while in the lobby of a midtown Manhattan office building. The Court of Appeals, confronted with the specific issue of whether the building owner owed a duty to the plaintiff, noted that: "the status of a person injured on another's land is not to be the determinative factor in assessing the landowner's duty of care *(Basso v Miller,* 40 NY2d 233). Thus, whether [the] plaintiff * * * was a 'business invitee' or a visitor of *some lesser status* is but one of the many considerations that must be taken into account in determining whether the risk of harm to him was forseeable under the

circumstances" *(Nallan v Helmsley-Spear, Inc., supra,* at p 518, n 6; emphasis supplied). The court, applying the foregoing principle to the facts there extant, implicitly recognized an obligation on the part of a building owner to take reasonable actions to minimize foreseeable risks and dangers to any "unwary [soul] who might venture onto the premises" *(Nallan v Helmsley-Spear, Inc., supra,* at p 518). Such an obligation, according to the court, "is recognized by our law, as but a natural corollary to the landowner's common-law duty to make the public areas of his property reasonably safe for those who *might enter* (see, e.g., *Kilmer v White,* 254 NY 64; *Junkermann v Tilyou Realty Co.,* 213 NY 404; Prosser, Torts [4th ed], § 63, pp 403-408; Restatement, Torts 2d, §§ 359-360)" *(Nallan v Helmsley-Spear, Inc., supra,* at p 519; emphasis supplied).

While acknowledging *Basso (supra)* and its progeny, the majority, in depriving the infant plaintiff of an opportunity to present her case to the jury, merely because she had no connection with the building, has effectively resurrected the type of rigid status classification scheme that had been expressly overruled in *Basso.* The view articulated by the majority has the effect of exempting the defendant from the general rule which permits a plaintiff to recover for injuries sustained as a result of a defendant's failure to observe standards of reasonable care under circumstances where the risk of harm may be anticipated. To reiterate, "[w]hile the likelihood of a plaintiff's presence *had been* an implicit consideration in the determination of status and the duty commensurate therewith, it now becomes a primary independent factor in determining *foreseeability* and the duty of the owner or occupier will vary with the likelihood of plaintiff's presence at the particular time and place of the injury" *(Basso v Miller,* 40 NY2d 233, 241, *supra;* emphasis supplied).

Among the factors which should be considered are "the location of the property in relation to populated areas, its accessibility and whether there have been any prior incidents of trespassing in the area where the injury occurred" *(see, Scurti v City of New York,* 40 NY2d 433, 442, *supra).* Although the injured party's status does remain relevant in assessing the foreseeability of his or her presence upon the property, status alone does not determine whether a duty exists in the first instance, and should not be utilized as a shield to protect an otherwise negligent party from liability.

Rather, the duty emanates from and is predicated upon the

party's ownership of and control over property, "for the obvious reason that the person in possession of property ordinarily is in the best position to discover and control its dangers" (see, Prosser and Keeton, Torts § 57, at 386 [5th ed 1984]). Under general principles of tort law, a landowner must exercise reasonable care to abate a dangerous condition which is known to exist, assuming there is an opportunity to do so. As this court has noted on a previous occasion, "the law [imposes] a duty upon the landlord to exercise ordinary care to keep * * * premises in a safe condition on behalf of third parties and the failure to exercise such care may result in liability" (see, Strunk v Zoltanski, 96 AD2d 1074, 1075, affd 62 NY2d 572). From a purely legal perspective, it should make little difference whether the source of the danger relates to a physical condition on the property itself, or whether it arises from the foreseeable activities of third parties upon the property (see, Drake v State of New York, 97 Misc 2d 1015, 1020, affd 75 AD2d 1016), since "landlords as others must exercise reasonable care not to expose third persons to an unreasonable risk of harm" (see, Strunk v Zoltanski, supra, at p 576). As this court has recently noted: "[a] person who possesses realty as either an owner or a tenant * * * is under a duty to exercise reasonable care under the circumstances to maintain the property in a safe condition * * * That duty includes an obligation to take minimal precautions to *protect members of the public from the reasonably foreseeable criminal acts of third persons*" (Iannelli v Powers, 114 AD2d 157, 161 [2d ed]; emphasis supplied).

The majority's view in this case mistakenly equates the recognition of a duty of care toward the infant plaintiff with the wholesale imposition of a duty to protect "all persons who regularly traffic the city streets and sidewalks" from the wanton or criminal acts of third parties. No such expansion of liability is suggested or intended. Indeed, I have no quarrel with the majority's conclusion that a party is under no general duty to control criminal acts of third persons. Clearly, a landlord must be in a position to prevent the harm complained of before it can be held to have had a duty to do so. What I do find troublesome is the fact that the majority's position would effectively foreclose an injured party from obtaining relief solely because of the manner in which that party came upon the property and without due regard to whether the risk of harm was within the range of apprehension. While it is true, of course, that a property owner is not

an insurer of the safety of all persons who venture onto the premises *(see, Nallan v Helmsley-Spear, Inc.,* 50 NY2d 507, 519, *supra),* reasonable precautions should have been taken by the defendant to prevent its premises from becoming a safe haven for the commission of crime. The majority, in its quest to place a limit on liability, has neglected to consider the fundamental question—whether the infant plaintiff was exposed to a foreseeable danger by virtue of acts or omissions on the part of the defendant which could be deemed a causative factor of the injuries sustained.

Turning to the facts at bar, and giving the evidence submitted by the plaintiffs the most favorable consideration, as we must in view of the procedural posture of this case, it appears that, at the very least, a triable issue of fact exists as to whether the defendant could have foreseen that a criminal assault, such as that which happened in this case, would occur on its premises due to its failure to properly secure the building. In this regard, the plaintiffs submitted evidence that several tenants had registered complaints with the defendant with regard to the malfunctioning lock. Moreover, during the two-year period immediately preceding the attack perpetrated against the infant plaintiff, at least five criminal incidents occurred in this particular building due to the entry of unauthorized persons onto the premises through the unlocked front door. Thus, it is clear that the defendant had prior notice that an intruder could easily gain entry into the building because of the absence of a working lock on the front door *(see, Nallan v Helmsley-Spear, Inc.,* 50 NY2d 507, *supra; Sherman v Concourse Realty Corp.,* 47 AD2d 134; *Loeser v Nathan Hale Gardens,* 73 AD2d 187; *Jacobs v Helmsley-Spear, Inc.,* 121 Misc 2d 910; *Clarke v J.R.D. Mgt. Corp.,* 118 Misc 2d 547; *Skaria v State of New York,* 110 Misc 2d 711). While the prior attacks apparently involved tenants of the building, the fact that the infant plaintiff was neither a tenant nor a visitor should not, in and of itself, preclude a finding that "the defendant should reasonably have foreseen that, under the conditions which prevailed, it was only a matter of time until someone [other than a tenant or visitor] might be injured" *(see, Quinlan v Cecchini,* 41 NY2d 686, 690, *supra).* The argument that it may have been foreseeable that the unlocked door would cause security problems for tenants, but not for a passing pedestrian, is unrealistic, since a criminal does not select a victim based on the victim's status or relationship to the property. The criminal merely considers whether the crime can be

committed without detection. I cannot concur in a decision which permits a landlord to escape the consequences of its own negligence solely because the person injured has no connection with the property. All the more is this so where, as here, the infant plaintiff committed no wrong in coming onto the property but was forced to do so against her will.

Nor, under the circumstances of this case, can I agree with the majority's statement that "there was also no reason to know from past experience of the presence of an assailant at some point near the premises who would endanger [the infant plaintiff's] safety to such a degree". First, the building in question is located in a highly populated area and is readily accessible to the general public (see, Scurti v City of New York, 40 NY2d 433, 442, supra). Second, as the majority itself acknowledges, there had been at least five criminal incidents involving unauthorized entry by third parties through the unlocked door, of which the defendant had notice.

Clearly, a rational jury could readily have found that the assailant was acutely aware of the defective condition of the lock. Indeed, the infant plaintiff testified at a deposition before trial that the assailant: "told me to walk and do whatever he told me, and he told me he was going to stab me, he told me to act like I was with him, like I was his girlfriend, hug him *he told me we were going to walk to the corner to a building around the corner* and he was going to take my money and leave" (emphasis supplied). The assailant then directed the infant plaintiff to the defendant's building, which, as he had indicated, was just around the corner. She was taken into the building through the unlocked front door. The assailant forced her into an elevator, took her to the roof, and there forcibly removed her clothing and sexually assaulted her for a period of approximately 25 minutes.

In addition, the plaintiffs submitted expert evidence to establish that if the front door to the defendant's lobby had been properly locked, thereby preventing access to a nearby secluded area, it was highly probable that the attack would not have occurred. While it cannot be stated with any degree of certainty that the infant plaintiff would not have been molested, but for the malfunctioning lock, the information that is contained in the record raises genuine issues of fact as to whether the defendant could have successfully averted the danger by exercising a greater degree of care *if not minimal care,* and whether its failure to do so "was a substantial cause

of the events which produced the injury" *(see, Derdiarian v Felix Contr. Corp.,* 51 NY2d 308, 315).

The fact that the actual cause of the injury in this case was the criminal act of a third party does not immunize the defendant from liability. Where a defendant's acts or omissions create a situation in which the possibility or likelihood of criminal activity could reasonably have been anticipated, and the defendant's conduct has created or increased the risk of harm, the intervening act of a third person will not insulate the original wrongdoer from liability and the intervening act will not constitute a break in the chain of causation *(see generally,* Prosser and Keeton, Torts § 44, at 305 [5th ed 1984]; *Duty and Liability—Attack by Another,* Ann., 10 ALR3d 619, 648, § 12; *see also, Boltax v Joy Day Camp,* 67 NY2d 617). As the court aptly noted in *Loeser v Nathan Hale Gardens* (73 AD2d 187, 191-192, *supra):* "Nor is there any substance to the contention that the landlord's negligence was not the proximate cause of the injuries because the immediate cause of the injuries was the criminal act of a third person. It has long been the rule that liability attaches if the danger from the criminal act was foreseeable. In *Lillie v Thompson* (332 US 459, 462) the Supreme Court stated: 'That the foreseeable danger was from intentional or criminal misconduct is irrelevant; respondent nonetheless had a duty to make reasonable provision against it. Breach of that duty would be negligence, and we cannot say *as a matter of law* that petitioner's injury did not result at least in part from such negligence.' (See, also, *Sherman v Concourse Realty Corp.,* 47 AD2d 134, 139, *supra;* Restatement, Torts [2d ed], § 449; Prosser, Torts [4th ed], pp 174, 175.)" (Emphasis supplied.)

The view to which I subscribe is not intended and should not be interpreted as an attempt to impose upon all landowners, whether public or private, liability for wanton acts of third persons on their premises. The dispositive factor in any such case is, of course, foreseeability, that is, whether the particular landowner was, or should have been aware, that due to its negligence, criminal acts of third persons would occur on its premises to the detriment of other individuals *(see, Johnson v New York City Hous. Auth.,* 114 AD2d 438). "Measured by [this] criteria, it is clear that the present case should have been permitted to go to the jury, whose province it would have been, after evaluating the proof, to determine whether in fact there was or was not a lack of ordinary care

in the management of the premises at the time and place in question" *(see, Quinlan v Cecchini,* 41 NY2d 686, 690, *supra).*

Although the majority's fear of exposing property owners to "boundless liability" is, no doubt, a valid concern, this same fear can serve a productive function, that of motivating landlords to observe the standard of care required of them by law. In my view, the prospect of a landlord facing a jury is not nearly as frightening as the potential for injury when property owners fail to maintain their premises in a reasonably safe manner. The simple expedient of ensuring that locks are kept in proper working order does not impose an unreasonable burden upon property owners and does not involve prohibitive costs. I simply fail to see the "deleterious ramifications" of so minimal a precaution. Nor does the recognition of a duty owing to the infant plaintiff guarantee the success of the action. Liability will only ensue if it is found that due care was not exercised by the defendant and that the failure to exercise due care substantially contributed to the injuries.

Accordingly, I would reverse the order appealed from and permit the plaintiffs to present their case to the jury.

GIBBONS, J. P., and RUBIN, J., concur with WEINSTEIN, J.; EIBER, J., dissents and votes to reverse the order appealed from and to deny the defendant's motion for summary judgment, with an opinion in which BROWN, J., concurs.

Order of the Supreme Court, Kings County, dated December 27, 1983, affirmed, with costs.