ALI ABDUR-RASHID, an Infant, by His Mother and Natural Guardian, NAIMA ABDUR-RASHID, et al., Plaintiffs, v CONSOLIDATED RAIL CORPORATION, Defendant and Third-Party Plaintiff-Respondent. NEW YORK CITY HOUSING AUTHORITY, Third-Party Defendant-Appellant. (And Another Action.)

First Department, February 25, 1988

**APPEARANCES OF COUNSEL**

*Brian J. Isaac* of counsel *(Gladstein & Isaac,* attorneys), for New York City Housing Authority.

*Lawrence R. Bailey, Jr.,* of counsel *(De Nice Powell, Jose R. Rios* and *Toni A. Bean* with him on the brief; *Walker & Bailey,* attorneys), for Consolidated Rail Corporation.

## OPINION OF THE COURT

CARRO, J.

Infant plaintiff, by his mother and natural guardian, commenced this action against defendant Consolidated Rail Corporation (hereinafter Conrail) to recover damages for the injuries plaintiff sustained when he was struck by a train, resulting in the amputation of his right leg and left foot. On April 13, 1982, infant plaintiff, then nine years old, was playing stickball with friends in a playground, which consisted of two basketball courts and which was maintained by the New York City Housing Authority in connection with the Morrisania Air Rights Houses. The playground was located adjacent to the defendant Conrail railroad station at 162nd Street and Park Avenue in The Bronx. Around the playground was a six-foot-high chain link fence.

According to his deposition, infant plaintiff left the playground to retrieve a baseball that had been hit over the fence and landed on the tracks. From the playground he went along a public street and then reached and descended a Conrail stairway that led to the station platform. From that vantage point he could see where the ball had landed. He descended to a second platform and then went out on the tracks to retrieve the ball. While still on the tracks, plaintiff fell, got his foot caught in the tracks, and was struck by a train, allegedly proceeding southbound on a northbound track.

After plaintiff commenced suit against Conrail, defendant Conrail commenced a third-party action for indemnification or contribution against New York City Housing Authority as owner of the playground. The Housing Authority moved for summary judgment dismissing the third-party complaint, which motion was denied by order dated March 12, 1987. The Housing Authority appeals from that order, and we reverse.

It is well established that "[t]he proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to eliminate any material issues of fact from the case" *(Winegrad v New York Univ. Med. Center,* 64 NY2d 851, 853). We conclude that third-party defendant Housing Authority satisfied its burden of establishing entitlement to a judg-

ment as a matter of law, since the facts of this case do not permit an inference of negligence to be drawn against the Housing Authority. As owner of the playground where plaintiff was playing, it is beyond question that the Housing Authority owed to plaintiff and all users of the playground a duty of care against foreseeable danger. *(See, Scurti v City of New York,* 40 NY2d 433, 445 [Breitel, Ch. J., concurring in part and dissenting in part]; *Caldwell v Village of Is. Park,* 304 NY 268, 274; *Leone v City of Utica,* 66 AD2d 463, 466, *affd for reasons stated below* 49 NY2d 811.) While what degree of care is reasonable ordinarily presents a jury question, "[i]n any negligence case the court must always determine as a threshold matter whether the facts will support an inference of negligence or lack of negligence" *(Scurti v City of New York, supra,* at 442).

Numerous factors are to be considered to determine whether any inference of negligence can be drawn from a particular set of facts. Where the injury occurred, the dangerousness of the property or the risk of injury posed by the property are relevant factors and must be balanced against the utility of the property and the public interest in the free use of property. *(Scurti v City of New York, supra.)* The foreseeability of the plaintiff's presence at the time and place of the injury is another important factor *(supra,* at 442). Particularly significant with regard to infant plaintiffs, especially in public park cases, is the age of the plaintiff and regard for the " 'well-known propensities of children to climb about and play' " *(supra,* at 442, quoting from *Collentine v City of New York,* 279 NY 119, 125).

This latter factor was particularly influential in the following three New York cases which upheld actions for negligence against municipal governments operating parks in close proximity to railroad tracks: *Scurti v City of New York (supra), Leone v City of Utica (supra)* and *Lukasiewicz v City of Buffalo* (55 AD2d 848, *lv denied* 41 NY2d 803). In each of these cases the facts were sufficient to support the inference that the defendants failed to exercise due care in maintaining the park in such a manner as to discourage the children playing in the park from roaming onto the nearby railroad tracks, where the injuries occurred. In *Scurti (supra),* for instance, the park fence through which the plaintiff entered the railroad yard contained several holes and from both sides of these holes were well-worn paths regularly used by children to get to and from the railroad yard. The majority of that court held that

the poor maintenance of the fence presented a question of fact as to whether the city exercised reasonable care to avoid foreseeable injury to children roaming onto the railroad yard from these paths and holes in the fence *(supra,* at 438, 439).

In *Lukasiewicz* (55 AD2d 848, *supra),* the infant plaintiff sustained his injuries when, after playing in a city playground, he went through a hole in the old chain link fence which enclosed the playground, reached the railroad tracks, which were 10 to 12 feet beyond the fence, and climbed and fell off a moving boxcar. That court concluded that the city's conduct in failing to maintain the fence supported an inference of negligence sufficient to present a fact question for the jury *(supra,* at 848-849).

In *Leone* (66 AD2d 463, *supra),* the infant plaintiff had been playing in a completely unfenced playground that was part of a larger, also unfenced, park. The park was heavily wooded and contained foot paths leading to railroad property on the park's western boundary lines. There were no barriers between the playground and park or between the park and railroad property. While playing in the wooded park area, the plaintiff heard a train whistle and ran from the park to the railroad tracks where he was injured when he fell beneath the train. The court upheld the jury's finding of negligence against the City of Utica as park owner on the ground that having knowledge of the railroad tracks and that pathways in the park led to these tracks, the jury could have found "in view of the foreseeable danger of serious injury presented by the location of the railroad tracks * * * that the failure of the city to fence its playground or park, or to supervise the use of the park or to take some other reasonable precaution to prevent or discourage children from going onto the railroad property, constituted a lack of ordinary care" *(supra,* at 467).

The facts at bar present a very different situation. Here, there did exist a clear line of demarcation between the playground and the tracks, and there was an absence of any defect or condition in the playground that would even impliedly invite children playing in the playground to enter the tracks from the playground or to use the railroad yard as an extension of their play area. The playground was fenced in by a six-foot chain link variety fence. There were no defects in the fence, such as openings, of which children could take advantage to get to the tracks. In fact, the playground was set up in such a way that children could not gain access to the tracks from the playground area.

Accordingly, infant plaintiff had to leave the playground area, travel along a public street and descend a flight of Conrail stairs before he could enter the railroad station and then the tracks. Although the fence was only six feet high, the playground itself was at street level, while the tracks were below street level. Thus, children would be discouraged from climbing over the fence to get to the tracks, since there would be a substantial drop to the railroad tracks. There was simply no manner in which children could get to the railroad tracks directly from the playground as there was in *Scurti, Leone* and *Lukasiewicz (supra).*

The argument that negligence can be inferred from the fact that enclosing the park with a six-foot fence did not discharge the Housing Authority of its duty of care, since such a fence would not prevent the foreseeable occurrence of balls going over the fence and children chasing after the balls, requires us to examine the extent to which the law may burden a landowner in meeting its duty of ordinary care against foreseeable harm. It is easily conceivable that a child could hit a ball over even a 20- or 30-foot fence. In fact, there is really no fence that would be feasible to build which would keep balls from leaving the park. Having a full-time attendant at this small playground, which would be very costly, also would not insure against future accidents on the railroad tracks, since it is questionable whether a playground attendant could prevent a child from leaving the playground, using a public street and then descending a flight of stairs to get to the railroad tracks.

Given the near impossibility of insuring that children using the playground will not somehow get onto the tracks, Conrail's argument must essentially boil down to a claim that the Housing Authority breached its duty of care to those using the park merely by placing the park in close proximity to railroad tracks. At the heart of a court's obligation to establish as a threshold legal matter the scope of an alleged tort-feasor's duty is the resolution of difficult questions of policy, logic and science and due consideration to the social consequences of its decision. *(See, Waters v New York City Hous. Auth.,* 69 NY2d 225, 229; *De Angelis v Lutheran Med. Center,* 58 NY2d 1053, 1055.) It hardly need emphasizing that there is a tremendous public need for parks and playgrounds for our youth. Equally obvious is the limited amount of space available for playgrounds in our over-crowded urban environment. Taking these considerations into account, in addition to the factors discussed above, we conclude that the Housing Authority did not

breach its duty of care to plaintiff when it provided a playground, which, although close to active railroad tracks, contained a clear line of demarcation separating the playground from the tracks and which itself did not provide any means of entry onto the tracks. A greater duty of care than this cannot be imposed, as the Authority is not obliged to be an insurer against dangerous conditions existing on land belonging to another and is only obliged to exercise reasonable care so that users of its playground do not roam onto the tracks due to any condition or defect existing on its own land.

Accordingly, the order of the Supreme Court, Bronx County (Jack Turret, J.), entered March 17, 1987, which denied the motion of third-party defendant New York City Housing Authority for summary judgment dismissing the third-party complaint against it, should be unanimously reversed, on the law, third-party defendant's motion granted and the third-party complaint dismissed, without costs.

SANDLER, J. P., ASCH and MILONAS, JJ., concur.

Order, Supreme Court, Bronx County, entered on March 17, 1987, unanimously reversed, on the law, third-party defendant's motion granted and the third-party complaint dismissed, without costs and without disbursements.