[803 NYS2d 538]

Mongo Lee, Respondent, v New York City Housing Authority, Appellant, et al., Defendants.

First Department, November 3, 2005

## APPEARANCES OF COUNSEL

*Herzfeld & Rubin, P.C.*, New York City (*Linda M. Brown* and *David B. Hamm* of counsel), for appellant.

*Macaluso & Fafinski, P.C.*, Bronx (*Donna A. Fafinski* of counsel), for respondent.

## OPINION OF THE COURT

SULLIVAN, J.

This is an appeal from the denial of the New York City Housing Authority's motion for summary judgment dismissing the complaint of Mongo Lee, who, as a 15 year old in 1994, was injured when, while retrieving a ball errantly thrown from a baseball field owned, maintained and operated by the Housing Authority, he was struck by an automobile on an adjacent public roadway. The focus of our inquiry is on the concepts of duty and causation.

Plaintiff had played baseball on the field in question for several years prior to the accident. For all of that time, there had been a hole or opening in the bottom of the fence that partially bounded the field on the first base side, and, on prior occasions, he had seen balls go through the hole. The fence also ran partially along the third base side of the field for a similar distance. As plaintiff testified at his deposition, the incident occurred during practice for a softball game. A catcher, plaintiff was at his position near home plate when an outfielder overthrew the first baseman. The ball rolled through the hole in the fence out into the adjoining street. Plaintiff chased after the ball but, rather than following it through the hole in the fence, ran down the third base line and then around the end of the fence onto a sidewalk. He turned left and ran down the sidewalk about 20 to 25 feet to retrieve the ball, which had rolled onto the roadway. According to plaintiff, when the ball stopped rolling, he entered the roadway to retrieve it. As he was about to get up after reaching down to pick up the ball, he was struck by a passing automobile.

Plaintiff commenced this action against the Housing Authority, the City of New York, the league sponsor[1] and the owner and operator of the offending automobile to recover damages

---

1. The sponsor, Quality of Life Program, the name given to certain activities by the tenants initiated, sponsored and funded by HUD through the 

for his injuries. Plaintiff has settled his claims against the owner and operator defendants for the applicable policy's $10,000 limit. The City of New York's motion for summary judgment dismissing the complaint was granted in the order on appeal. That aspect of the order is not challenged. Plaintiff's case against the Housing Authority was premised on two theories: as the owner of the ballfield, it failed properly to maintain the fence, which enabled the ball to roll into the roadway, causing plaintiff to chase it and thereby sustain injury. Plaintiff also claimed that he was playing "under the auspices of" the Housing Authority and the "Quality of Life Program" and that the Authority failed to provide adequate supervision during the practice session.

After joinder of issue and discovery, the Housing Authority moved for summary judgment dismissing the complaint, arguing that it did not owe a duty to plaintiff given the remoteness and attenuation of the alleged negligence to the accident. It also argued the lack of proximate causation in that, while the opening in the fence may have furnished the occasion for the ball to roll onto the roadway, it was not a legal cause of plaintiff's injuries. Rather, it urged, the accident was caused by the unforeseeable, intervening negligent conduct of the driver of the automobile and plaintiff's own conduct in entering the roadway to retrieve the ball.

In opposing the motion, plaintiff argued that questions of fact exist as to whether the Housing Authority breached a duty to him and whether his running into the street to retrieve a ball that had gone through a hole in the fence was a "normal foreseeable consequence" of the Housing Authority's negligence. Plaintiff also submitted a purported affidavit from a "forensic examiner," who asserted, in a conclusory manner, based on the absence of portions of the fencing, that the "Housing Authority was negligent for its failure to maintain the fencing at issue, and that this failure was the reason or cause for [plaintiff's] accident. Clearly, [plaintiff's] action of running to retrieve the ball was a reasonable foreseeable consequence that would arise because of the hole in the fence."[2]

In denying the motion, Supreme Court rejected the negligent supervision claim and found issues of fact as to the Housing

Housing Authority's Drug Elimination Program, is not a legal entity amenable to suit.

2. Supreme Court did not mention the affidavit in its decision. In any event, any reliance would have been improper since the affidavit was both undated and unnotarized (*see Clarke v Brooklyn Union Gas Co.*, 297 AD2d 779, 781 [2002]).

Authority's alleged negligence in maintaining the fence and as to whether the defect in the fence was the proximate cause of plaintiff's injuries. Since we find that the Housing Authority did not breach a duty to plaintiff and that, in any event, the hole in the fence was not a proximate cause of plaintiff's accident, we reverse and dismiss the complaint.

While a landowner has a duty to maintain its property in a reasonably safe condition, that duty is not without limits (*Di Ponzio v Riordan*, 89 NY2d 578, 582-583 [1997]; *Waters v New York City Hous. Auth.*, 69 NY2d 225, 228-229 [1987]). The scope of the duty is defined by the harm reasonably to be perceived (*Di Ponzio* at 583). As the Court of Appeals noted in *Di Ponzio*, "[A]lthough virtually every untoward consequence can theoretically be foreseen 'with the wisdom born of the event,' the law draws a line between remote possibilities and those that are reasonably foreseeable" (*id.* [citation omitted]). Moreover, courts must be guided by public policy considerations in circumscribing the scope of duty so that the legal consequences of civil wrongs are limited to a controllable degree (*see id.*; *Waters*, 69 NY2d at 229).

In the instant case, plaintiff, in an effort to retrieve the ball, did not impulsively follow it through the opening in the fence but rather chose to run down the third base line, which was opposite the hole, around the fence onto the sidewalk and then 20 to 25 feet down the sidewalk. After the ball stopped rolling, plaintiff, in an effort to retrieve it, entered the street, where he was struck by a car. Given these undisputed facts, plaintiff's claim, stripped to its essence, is that the Housing Authority owed him a duty to construct and maintain its fence in such a manner as to prevent a ball from rolling through the fence abutting the field. Here, the ball could just as well have traveled over the fence and plaintiff undoubtedly would have chosen the same course of action to retrieve it. This Court has rejected a similar argument for the imposition of such a duty (*see Abdur-Rashid v Consolidated Rail Corp.*, 135 AD2d 208 [1988], *lv denied* 72 NY2d 807 [1988]).

In *Abdur-Rashid*, the nine-year-old plaintiff was playing stickball in a playground, maintained by the Housing Authority, surrounded by a six-foot-high chain-link fence. The plaintiff left the playground, which was adjacent to a railroad station, to retrieve a ball that had been hit over the fence and landed on the railroad tracks. After exiting the playground, he descended a stairway leading to the station platform and then proceeded

onto the tracks where he was struck by a passing train. In granting summary judgment to the Housing Authority, we, as noted, rejected the argument that a six-foot-high fence was not sufficient to prevent the foreseeable occurrence of balls going over the fence and children chasing after them. This Court noted the impracticality of building any fence that would prevent balls from leaving the park and that a ball could be hit over a fence even 20 or 30 feet high.

In the instant case, in denying the Housing Authority's motion for summary judgment, Supreme Court distinguished *Abdur-Rashid* by the fact that, here, the fence was defective. Supreme Court noted that in *Abdur-Rashid,* this Court had cited cases (*Scurti v City of New York*, 40 NY2d 433 [1976] and *Lukasiewicz v City of Buffalo,* 55 AD2d 848 [1976], *lv denied* 41 NY2d 803 [1977]) which held that where a poorly maintained fence enabled children to wander out of a park and into dangerous surroundings a question of fact was presented as to whether the landowner exercised reasonable care.

*Scurti* and *Lukasiewicz* are distinguishable, however, from the instant case. In each of these cases, the accident occurred when the infant, after playing in a municipal playground, went through a hole in a fence enclosing the playground and entered a nearby railroad yard. In *Scurti*, the infant climbed to the top of a freight car and was electrocuted when he came into contact with a high voltage wire. In *Lukasiewicz*, the infant fell from a moving boxcar, which then ran over his leg, necessitating its amputation. Here, plaintiff did not go through the hole in the fence to enter an extremely dangerous area like a rail yard. Instead, he ran in a direction opposite from the hole to run around the end of the fence onto a sidewalk and then down the sidewalk some 20 to 25 feet and onto a public roadway. The nexus between the defectively maintained fence and plaintiff's injuries is far more attenuated than in *Scurti* and *Lukasiewicz*. Furthermore, in both *Scurti and Lukasiewicz*, there was some suggestion of the application of the doctrine of attractive nuisance, the Courts intimating that the infants were impliedly invited to play in a dangerous area, a railroad yard, because of the hole in the fence. Here, in contrast, plaintiff was not invited to play in a dangerous area because of a defect. The hole in the fence (which, in any event, plaintiff did not go through to retrieve the ball) led onto a sidewalk, no more dangerous than any other.

Supreme Court's imposition of a duty on the Housing Authority in the circumstances of this case represents an unwarranted

extension of tort liability. At some point, courts must place a limitation on a landowner's proprietary duty in order to prevent the unbridled imposition of tort liability (*Waters,* 69 NY2d at 229; *Pulka v Edelman,* 40 NY2d 781 [1976]). The circumstances leading to this unfortunate incident were too remote and attenuated from any reasonably foreseeable risks created by the Authority's failure to construct and maintain the fence in a manner that would prevent balls from being thrown or hit out of its playing fields.

Were we not dismissing the case against the Housing Authority for lack of a breach of duty to plaintiff, we would do so for lack of proximate cause. Given the uncontroverted facts, it is clear that while the hole in the fence may have furnished the occasion for the ball to leave the playing field, it was not a legal cause of plaintiff's injuries. The accident was caused by the intervening negligent act of the driver and plaintiff's impulsive act in chasing the ball into the street.

It is well settled that "[w]here the evidence as to the cause of the accident which injured plaintiff is undisputed, the question as to whether any act or omission of the defendant was a proximate cause thereof is one for the court and not for the jury" (*Rivera v City of New York,* 11 NY2d 856, 857 [1962]). As the Court of Appeals stated, "This court has consistently held that the negligence complained of must have caused the occurrence of the accident from which the injuries flow" (*id.*). The law draws a sharp distinction between a condition that merely sets the occasion for or facilitates an accident and an act that is a proximate cause of the accident (*see e.g. Ventricelli v Kinney Sys. Rent A Car,* 45 NY2d 950 [1978]; *Sheehan v City of New York,* 40 NY2d 496, 503 [1976]; *Rivera v City of New York, supra*).

In *Ventricelli,* the Court held, as a matter of law, that a defective trunk lid on a rented car was not a proximate cause of an accident that occurred when the plaintiff, while attempting to close the lid, was struck by another car. The Court held that, while the plaintiff might not have been standing where he was but for the defect, in terms of legal causation, the defect was not a proximate cause of the accident. The effective and immediate cause was the negligence of the driver of the second car in striking the plaintiff as he stood behind the parked vehicle.

Here, the Housing Authority's alleged negligent act, at most, caused the ball to roll out of the field, which was not the immediate effective cause of the accident. A case in point is *Boltax v*

*Joy Day Camp* (67 NY2d 617 [1986]). There, the plaintiff, a young adult, entered a closed pool area at night through a hole in the fence and, fully aware of the existing conditions, dove from a lifeguard's chair into a shallow area of the pool, which was filled below capacity. The property owner was awarded summary judgment on the ground that, while its negligence was a "causative factor in plaintiff's injuries," it was not its legal cause. (*Id.* at 620.)

*Hoenig v Park Royal Owners* (249 AD2d 57 [1998], *lv denied* 92 NY2d 811 [1998]) is also instructive. The plaintiff claimed that she was prevented from parking closer to the curb by the negligence of the defendants abutting owner, in failing to remove snow from the curb, and Con Edison, in leaving a tool cart by the curb. After exiting her parked car, the plaintiff was struck by a taxicab. This Court held, as a matter of law, that the defendants' negligence was not the proximate cause of the plaintiff's injuries. Rather, we held, the intervening negligence of the taxicab driver negated any proximate effect that the acts of the defendants might have had in causing the accident. "If anything," we held, the defendants' acts of negligence "merely contributed to the setting for the accident—a condition for the occurrence, rather than one of its causes" (*id.* at 59). In *Murray v New York City Hous. Auth.* (269 AD2d 288 [2000]), the plaintiff was injured when a bathroom door that had come off its hinges fell on her after she propped it against the bathroom doorway. This Court held that the sole proximate cause of plaintiff's injuries was her placing a heavy, unsecured door upright and unbraced in the bathroom doorway.

Moreover, courts have repeatedly held that where the acts of the injured party or a third party intervene between the defendant's conduct and the plaintiff's injury and the intervening act is independent of the defendant's conduct, the causal connection is broken (*see e.g. Hoenig,* 249 AD2d 57 [1998], *supra; Florman v City of New York,* 293 AD2d 120 [2002]; *Rizzi v Scarsdale Leasing Corp.,* 223 AD2d 696 [1996]; *Elardo v Town of Oyster Bay,* 176 AD2d 912 [1991]; *Valle v City of New York,* 247 AD2d 534 [1998], *lv denied* 92 NY2d 809 [1998]). Thus, even assuming, arguendo, the breach of a duty on the part of the Housing Authority, under the facts of this case the hole in the fence that allowed the ball to leave the playing field and enter the roadway was not a proximate cause of plaintiff's injuries.

Accordingly, the order of the Supreme Court, Bronx County (Alison Y. Tuitt, J.), entered on or about December 13, 2004, to

the extent it denied the New York City Housing Authority's motion for summary judgment dismissing the complaint as against it, should be reversed, on the law, without costs or disbursements, and the motion granted. The Clerk is directed to enter judgment accordingly.

FRIEDMAN, J.P., NARDELLI, GONZALEZ and SWEENY, JJ., concur.

Order, Supreme Court, Bronx County, entered on or about December 13, 2004, reversed, on the law, without costs or disbursements, and defendant New York City Housing Authority's motion for summary judgment dismissing the complaint as against it granted. The Clerk is directed to enter judgment accordingly.