■ BENJAMIN W. GIBBUD, an Infant, by MELISSA H. GIBBUD, His Parent, et al., Appellants, v CAMP SHANE, INC., Respondent. [817 NYS2d 435]—

Rose, J. Appeals (1) from an order of the Supreme Court (Clemente, J.), entered March 9, 2005 in Sullivan County, which granted defendant's motion for summary judgment dismissing the complaint, and (2) from the judgment entered thereon.

After being told that he and his bunkmates could "sleep in" one rainy morning at defendant's summer camp, 15-year-old plaintiff Benjamin W. Gibbud (hereinafter plaintiff) fractured his right ankle when he attempted to engage in horseplay in his cabin by jumping on his counselor's back. Alleging negligent supervision, plaintiff and his mother commenced this action against defendant. When defendant moved for summary dismissal of the complaint, Supreme Court granted the motion, finding, among other things, that defendant's counselor was not shown to have been negligent. Plaintiffs appeal, and we affirm.

At the time of the incident, plaintiff was 6 feet 3 inches and weighed 302 pounds. Alex Wendorf, plaintiff's cabin counselor, was 21 years old, 6 feet 2 inches and weighed 335 pounds. When another camper, Noah Zilberstein, tried to goad Wendorf into a wrestling match by snapping a rat-tailed bath towel at him, Wendorf grabbed the towel out of Zilberstein's hand. In his deposition, plaintiff described the encounter between Wendorf and Zilberstein as "just horsing around," which he later explained as "pushing back and forth" or "trying to grab each other." Zilberstein then tried to induce the other campers in the cabin to join in and "get" Wendorf. Out of a dozen or so campers, plaintiff was the only one who responded. Approaching Wendorf from behind, he jumped on Wendorf's back and grabbed him in a bear hug, pinning Wendorf's arms to his sides. Wendorf immediately raised his arms, shrugging plaintiff off, and pivoted to see who it was. According to Wendorf and Zilberstein, plaintiff slid off Wendorf's back and fell to the floor. Plaintiff's own account is that Wendorf turned, grabbed him and "started to force [him] down to the ground." In either event, plaintiff's foot struck the floor in such a way as to fracture his ankle.

Plaintiffs contend that Supreme Court improperly discredited plaintiff's account in finding no questions of fact as to whether Wendorf had acted negligently immediately before and after plaintiff jumped on his back. We disagree. While the duty of care owed by persons supervising children in a summer camp setting is that which a reasonably prudent parent would observe under comparable circumstances (see *Douglas v John Hus Moravian Church of Brooklyn, Inc.*, 8 AD3d 327, 328 [2004]; *Gustin v Association of Camps Farthest Out*, 267 AD2d 1001, 1002 [1999]), "[a] certain amount of horseplay is almost always to be found in gatherings of young people, and is generally associated with children's camps. It is only to be discouraged when it becomes dangerous" (*Kosok v Young Men's Christian Assn. of Greater N.Y.*, 24 AD2d 113, 115 [1965], *affd* 19 NY2d 935 [1967]). Moreover, a parent, teacher or other person entrusted

with the care or supervision of a child may use such physical force as he or she reasonably believes to be necessary to maintain control and discipline (*see Sindle v New York City Tr. Auth.*, 33 NY2d 293, 297 [1973]; *Matter of Collin H.*, 28 AD3d 806 [2006]; *see also* Restatement [Second] of Torts § 147).

Viewing the record in a light most favorable to plaintiffs and accepting plaintiff's account, we find no factual basis to conclude that Wendorf's responses to either Zilberstein's rat-tailing or having been set upon from behind by plaintiff were negligent. Despite plaintiffs' argument to the contrary, the admissible evidence fails to show that Wendorf's efforts to quell horseplay by Zilberstein were negligent. In any event, that conduct was not the proximate cause of plaintiff's injury. While Zilberstein's interaction with Wendorf may have furnished the occasion for plaintiff to decide to leave his bunk and join in, it was the manner in which he did so, his own impulsive and reckless act of grabbing Wendorf from behind, that led to his injury (*see Lee v New York City Hous. Auth.*, 25 AD3d 214, 219 [2005], *lv denied* 6 NY3d 708 [2006]; *Loder v Greco*, 5 AD3d 978, 979 [2004]; *Ascher v Scarsdale School Dist.*, 267 AD2d 339, 339 [1999]). Given that Wendorf did not know who had suddenly jumped on his back, his reaction to being blindsided and having his arms pinned to his sides in a bear hug by the physically imposing plaintiff raises no issue of his inappropriate or unreasonable use of force. By plaintiff's own account, Wendorf merely turned, grabbed him and pushed him down. Under these circumstances, we can draw no inference of negligence (*compare Gonzalez v City of New York*, 286 AD2d 706, 707-708 [2001]).

Mercure, J.P., Peters, Spain and Kane, JJ., concur. Ordered that the order and judgment are affirmed, with costs.